# McCABE *v.* ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 15.  Argued October 26, 1914.—Decided November 30, 1914.

Under the Enabling Act the State of Oklahoma was admitted to the Union on an equal footing with the original States, and has the same authority to enact public legislation not in conflict with the Federal Constitution as other States may enact. *Coyle* v. *Oklahoma,* 221 U. S. 559.

It is not an infraction of the Fourteenth Amendment for a State to require separate, but equal, accommodations for the white and African races. *Plessy* v. *Ferguson,* 163 U. S. 537.

While a state statute, although fair on its face, may be so unequally and oppressively administered by the public authorities as to amount to an unconstitutional discrimination by the State itself, *Yick Wo* v. *Hopkins,* 118 U. S. 356, no discriminations unauthorized by the statute appear to have been practiced in this case under state authority.

The Oklahoma statute, requiring separate, but equal, accommodations for the white and African races, must, in the absence of a different construction by the state court, be construed as applying exclusively to intrastate commerce; and, as so construed, it does not contravene the commerce clause of the Federal Constitution.

The essence of the constitutional right to equal protection of the law is that it is a personal one and does not depend upon the number of persons affected; and any individual who is denied by a common carrier, under authority of the State, a facility or convenience which is furnished to another under substantially the same circumstances may properly complain that his constitutional privilege has been invaded.

The Oklahoma Separate Coach Law does discriminate against persons of the African race in permitting carriers to provide sleeping cars, dining cars and chair cars to be used exclusively by persons of the white race; this provision none the less offends against the Fourteenth Amendment even if there is a limited demand for such accommodations by the African race as compared with the white race.

In order to justify the granting of an injunction complainants must

show a personal need of it, and absence of adequate remedy at law. The fact that someone else, although of the same class as complainant, may be injured does not justify granting the remedy.

In an action, brought in 'the Federal court by several persons of the African race before the Separate Coach Law of Oklahoma went into effect, to enjoin the enforcement thereof on the ground that it contravened the Fourteenth Amendment, *held* that the allegations in the. bill were too vague and indefinite to warrant the relief sought by complainants; that none of the complainants had personally been refused accommodations equal to those afforded to others or had been notified that he would be so refused when the act went into effect; that it did not appear that in such event he would not have an adequate remedy at law, and that the action could not be maintained. 186 Fed. Rep. 966, affirmed.

The facts, which involve the constitutionality of the Separate Coach Law of Oklahoma, are stated in the opinion.

*Mr. William Harrison*, with whom *Mr. Edwin O. Tyler* and *Mr. Ethelbert T. Barbour* were on the brief, for appellants:

The court erred in holding that the Oklahoma statute does not operate and deprive those of African descent of the equal protection of the laws within the meaning of the Constitution, which implies not merely equal accessibility to the court for the prevention or redress of wrongs and the enforcement of rights, but equal exemption with others in like condition from charges and liabilities of every kind.

The police power cannot be interposed to support a statute having no possible tendency to protect the community or for the preservation of the public safety, but which arbitrarily deprives the owner of liberty or property. *Mugler* v. *Kansas*, 123 U. S. 623, 661; *Lawton* v. *Steele*, 152 U. S. 133; *Holden* v. *Hardy*, 169 U. S. 366, 398; *California Reduction Co.* v. *Sanitary Reduction Works*, 199 U. S. 306; *In re Jacobs*, 98 N. Y. 98, 50 Am. Rep. 636; Freund, Police Power, 525.

State police legislation may be invalid because it trenches on the sphere of the National Government under the Federal Constitution. *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540.

So also as to police legislation which purports to deal with subjects beyond territorial jurisdiction. *Morgan's Steamship Co.* v. *Louisiana,* 118 U. S. 455, 464; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1; *Missouri &c. Ry. Co.* v. *Haber,* 169 U. S. 618; *Reid* v. *Colorado,* 187 U. S. 137; *New York &c. R. Co.* v. *New York,* 165 U. S. 628; *Allgeyer* v. *Louisiana,* 165 U. S. 578.

A law not enacted in good faith for the promotion of the public good but passed from the sinister motive of annoying or oppressing a particular person or class is invalid. *Yick Wo* v. *Hopkins,* 118 U. S. 356.

The Oklahoma Act is violative of the commerce clause of the Constitution. *Henderson* v. *New York,* 92 U. S. 259; *Welton* v. *Missouri,* 91 U. S. 275; *Wabash &c. Ry. Co.* v. *Illinois,* 118 U. S. 557.

The act does restrict and affect interstate, to the same extent as intrastate, commerce; and in this respect the act is so plain and unambiguous as to leave no room for interpretation. *Houghton* v. *Payne,* 194 U. S. 88.

The doctrine of contemporaneous practical construction does not apply to statutes which are explicit and free from any ambiguity. *Swift* v. *United States,* 105 U. S. 695; *United States* v. *Graham,* 110 U. S. 219; *Merrit* v. *Cameron,* 137 U. S. 542, aff'g 102 Fed. Rep. 947; *Franklin Sugar Co.* v. *United States,* 153 Fed. Rep. 653.

The term negro as used in the act includes every person of African descent as defined by the Constitution.

Passengers coming into Oklahoma, and going out and going through Oklahoma, upon their failure to go to the coach or compartment designated for the race to which they belong have been ejected, arrested and confined in the common jails.

Commerce among the commonwealths is traffic, trans-portation and intercourse between two points situated in different States. *Wabash R. R. Co.* v. *Illinois*, 118 U. S. 557; *Louisville Ry. Co.* v. *Mississippi*, 133 U. S. 587, 592; *Ches. & Ohio Ry. Co.* v. *Kentucky*, 179 U. S. 388, 395; *Butler Bros. Shoe Co.* v. *United States Rubber Co.*, 156 Fed. Rep. 1, 19. *Pacific Express Co.* v. *Siebert*, 142 U. S. 339, distinguished.

The statute is not separable as to interstate and intra-state commerce, and, therefore, the whole act is uncon-stitutional. *United States* v. *Reese*, 92 U. S. 214; *Trade Mark Cases*, 100 U. S. 82; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Pollock* v. *Farmers Trust Co.*, 158 U. S. 636. See also Cooley's Const. Lim., p. 209; *State* v. *Denny*, 21 N. E. Rep. 275; *State* v. *Perry County Commissioners*, 5 Ohio, 497; *Island* v. *Louisiana*, 103 U. S. 80; *Spraigue* v. *Thompson*, 118 U. S. 90, 94; *Chi., Mil. & St. P. Ry. Co.* v. *Westby*, 178 Fed. Rep. 619, 632.

The very fact that the act subjects every passenger to the provisions of the law and makes no distinction or exception as to interstate passengers, raises a conclusive legal presumption that the legislature intended to make no distinctions and exceptions, and the act is not subject to judicial construction. To so do would be unjustifiable judicial legislation. The rule is that which is not denied is granted. *Hall* v. *DeCuir*, 95 U. S. 485; *Union Central Ins. Co.* v. *Champlin*, 116 Fed. Rep. 858, 860; *Wrightman* v. *Boone County*, 88 Fed. Rep. 435, 437; *Madden* v. *Lan-chester Co.*, 65 Fed. Rep. 188, 194; *Water Co.* v. *Omaha*, 147 Fed. Rep. 1; *Cella Commission Co.* v. *Bohlinger*, 147 Fed. Rep. 419, 425; *Mobile* v. *Kimball*, 102 U. S. 691, 697; *Brown* v. *Houston*, 114 U. S. 622; *Bowman* v. *Chicago &c. Ry. Co.*, 125 U. S. 465, 488.

The statute is so formed and applied that its application and operation can be used to discriminate against one class of citizens. *Yick Wo* v. *Hopkins*, 118 U. S. 356;

*Chy Lung* v. *Freeman,* 92 U. S. 275; *Ex parte Virginia,* 100 U. S. 339; *Neal* v. *Delaware,* 103 U. S. 370, 374; *Soon Hing* v. *Crowley,* 113 U. S. 703.

The sleeping and parlor car proviso is an evasion as against prior existing rights and is a law without a remedy. The carriers operate under this law unevenly and oppressively to those of African descent.

The constitutional rights of citizens are not dependent upon considerations nor upon the varying conditions and circumstances. Citizens of African descent have no adequate remedy at law as the act provides no penalty for the failure or the refusal to provide equal accommodations, or chair cars, dining cars and sleeping cars, and said law is unconstitutional and void.

The act violates §§ 22 and 25 of the Enabling Act under which Oklahoma was admitted into the Union.

Race distinction in the law is any requirement by statute, constitutional, provisional or judicial legislation, that a person act differently if he is a member of one or another of the races in the United States. Congress intended that the only exception to the equality provision of the Enabling Act is that the State may establish and maintain separate schools for the white and colored children.

The State, after having accepted irrevocably the terms and all of the terms of the Enabling Act, cannot thereafter be heard to complain or to repudiate any or all of such terms. *Frantz* v. *Autry,* 91 Pac. Rep. 193.

The act conflicts with the Fourteenth Amendment. It is discriminatory. It was not passed for the health, safety and comfort of its citizens, but as a subterfuge under the guise of police power and police protection. The danger does not justify the degree of restraint imposed, but the act is wholly racial and based upon race and color as such.

An act that permits and even authorizes and directs the excluding of one class of persons, and in this case the

negroes, from privileges and immunities enjoyed by every-
body else similarly situated, and excluding the negro, and
leaving him without remedy, from the comforts and con-
veniences of chair cars, dining cars, sleeping cars, such as
are enjoyed by all other men; which deprives the negro of
the privileges and comforts which he enjoyed prior to the
passage of such act; which now imposes a fine upon the
negro if he attempts to exercise the rights which he enjoyed
before the passage of such act, must defeat the purpose,
defy the spirit, and violate the express provision of the
Fourteenth Amendment. *Yick Wo* v. *Hopkins*, 118 U. S.
356; *Strauder* v. *West Virginia*, 100 U. S. 303, 306.

*Mr. S. T. Bledsoe, Mr. Charles West,* Attorney General
of the State of Oklahoma, *Mr. J. R. Cottingham, Mr. C. O.
Blake, Mr. Clifford L. Jackson, Mr. R. A. Kleinschmidt*
and *Mr. C. E. Warner,* for appellees, submitted:

This court has not jurisdiction to entertain the appeal.

The Oklahoma Separate Coach Law is not violative of
the commerce clause of the Constitution of the United
States.

There is no charge that the railway companies are apply-
ing the state statute to interstate passengers.

The constitutionality of the Separate Coach Act is not
affected by the Enabling Act, nor does that law conflict
with the Fourteenth Amendment.

The statute is not divisible. *Abbott* v. *Hicks,* 44 La.
Ann. 74; *Arbuckle* v. *Blackburn,* 191 U. S. 405; *Atch.,
Top. & Santa Fe Ry. Co.* v. *State,* 124 Pac. Rep. 56; *Bonin*
v. *Gulf Co.,* 198 U. S. 115; *Bolln* v. *Nebraska,* 176 U. S. 83;
*Butler Brothers* v. *U. S. Rubber Co.,* 156 Fed. Rep. 18; *Ches.
& Ohio Ry. Co.* v. *Kentucky,* 179 U. S. 388; *Chiles* v.
*Ches. & Ohio Ry. Co.,* 218 U. S. 71; *Oklahoma* v. *Atch., Top.
& S. F. Ry. Co.,* 25 I. C. C. Rep. 120; *Escanaba Co.* v.
*Chicago,* 107 U. S. 678, 688; *Florida Central Co.* v. *Bell,* 176
U. S. 321; *Hanford* v. *Davies,* 163 U. S. 274; *Louisville*

*&c. R. R. Co.* v. *State,* 6 So. Rep. 203; *Louisville &c. R. R. Co.* v. *Mississippi,* 133 U. S. 587; *McCabe* v. *Railway Co.,* 186 Fed. Rep. 966; *Ohio Valley Ry.* v. *Lander,* 47 S. W. Rep. 344; *Pacific Exp. Co.* v. *Seibert,* 142 U. S. 339; *Permoli* v. *First Municipality,* 3 How. 589, 609; *Plessy* v. *Ferguson,* 163 U. S. 537; *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505; *Shulthis* v. *McDougal,* 225 U. S. 561; *So. Ry. Co.* v. *King,* 217 U. S. 524; *Thompkins* v. *M., K. & T. Ry. Co.,* 211 Fed. Rep. 391; *Ward* v. *Race Horse,* 163 U. S. 504; *Willamette Bridge Co.* v. *Hatch,* 125 U. S. 1.

The purpose of the case is to prevent separation of races, but the prayer only objects to distinction.

The proceeding cannot be one for mandatory injunction for equal facilities, nor is the action one for damages.

The state statute requires equal comforts. Neither the common law nor the Interstate Commerce Act gives a right of action enforceable in a Federal court before any application to the Interstate Commerce Commission as to interstate traffic.

The right of action cannot arise out of state law for want of jurisdiction in the lower court, nor can any right of action arise out of the Enabling Act or of the Constitution of the United States.

The plaintiffs do not allege lack of comforts under such circumstances as are sufficient to compel their furnishing, nor is any injury shown. *Atlantic Coast Line* v. *Mazurky,* 216 U. S. 122; *Balt. & Ohio R. R.* v. *Pitcairn Coal Co.,* 215 U. S. 481; *Coyle* v. *Smith,* 221 U. S. 559; *Covington* v. *Hagar,* 203 U. S. 109; *C., M. & St. P.* v. *Solon,* 169 U. S. 133; *Giles* v. *Harris,* 189 U. S. 475; *Int. Com. Com.* v. *Balt. & Ohio,* 145 U. S. 263; *Int. Com. Com.* v. *Ala. Co.,* 168 U. S. 165; *Int. Com. Com.* v. *Louisville Co.,* 73 Fed. Rep. 409; *M. & O. G.* v. *State,* 29 Oklahoma, 640, 653; *Rosenbaum* v. *Bauer,* 120 U. S. 450; *St. L. & St. Co.* v. *Sutton,* 29 Oklahoma, 553; *Taft* v. *So. Ry. Co.,* 123 Fed. Rep. 792; *Tex. & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.,*

204 U. S. 426; *United States* v. *L. S. & M. S. Ry.*, 197 U. S. 540; *United States* v. *Norfolk Ry. Co.*, 109 Fed. Rep. 831; *United States* v. *B. & O. R. R. Co.*, 145 U. S. 263; *United States* v. *Hanley*, 71 Fed. Rep. 673; *United States* v. *Sayward*, 160 U. S. 493; Compiled Laws of Oklahoma, 1910; 25 Stat. 862; 24 Stat. 24, 377.

MR. JUSTICE HUGHES delivered the opinion of the court.

The legislature of the State of Oklahoma passed an act, approved December 18, 1907 (Rev. Laws, Okla., 1910, §§ 860 *et seq.*), known as the 'Separate Coach Law.' It provided that 'every railway company . . . doing business in this State, as a common carrier of passengers for hire' should 'provide separate coaches or compartments, for the accommodation of the white and negro races, which separate coaches or cars' should 'be equal in all points of comfort and convenience' (§ 1); that at passenger depots, there should be maintained 'separate waiting rooms,' likewise with equal facilities (§ 2); that the term negro, as used in the act, should include every person of African descent, as defined by the state constitution (§ 3); and that each compartment of a railway coach 'divided by a good and substantial wooden partition, with a door therein, shall be deemed a separate coach' within the meaning of the statute (§ 4).

It was further provided that nothing contained in the act should be construed to prevent railway companies 'from hauling sleeping cars, dining or chair cars attached to their trains to be used exclusively by either white or negro passengers, separately but not jointly' (§ 7).

Other sections prescribed penalties both for carriers, and for passengers, failing to observe the law (§§ 5, 6). The act was to take effect sixty days after its approval (§ 12).

On February 15, 1908, just before the time when the statute, by its terms, was to become effective, five negro

citizens of the State of Oklahoma (four of whom are appellants here) brought this suit in equity against The Atchison, Topeka & Santa Fe Railway Company, The St. Louis & San Francisco Railroad Company, The Missouri, Kansas & Texas Railway Company, The Chicago, Rock Island & Pacific Railway Company and The Fort Smith & Western Railroad Company, to restrain these companies from making any distinction in service on account of race. On February 26, 1908,—after the act had been in operation for a few days—an amended bill was filed seeking specifically to enjoin compliance with the provisions of the statute for the reasons that it was repugnant (a) to the commerce clause of the Federal Constitution, (b) to the Enabling Act under which the State of Oklahoma was admitted to the Union (act of June 16, 1906, c. 3335, § 3, 34 Stat. 267, 269), and (c) to the Fourteenth Amendment. The railroad companies severally demurred to the amended bill, asserting that it failed to state a case entitling the complainants to relief in equity. The Circuit Court sustained the demurrers and, as the complainants elected to stand upon their bill, final decree dismissing the bill was entered. This decree was affirmed by the Court Circuit of Appeals (186 Fed. Rep. 966), and the present appeal has been brought.

The conclusions of the court below as stated in its opinion were, in substance:

1. That under the Enabling Act, the State of Oklahoma was admitted to the Union 'on an equal footing with the original States' and with respect to the matter in question had authority to enact such laws, not in conflict with the Federal Constitution, as other States could enact; citing, *Permoli* v. *First Municipality,* 3 How. 589, 609; *Escanaba Company* v. *Chicago,* 107 U. S. 678, 688; *Willamette Iron Bridge Co.* v. *Hatch,* 125 U. S. 1; *Ward* v. *Race-Horse,* 163 U. S. 504; *Bolln* v. *Nebraska,* 176 U. S. 83. See also *Coyle* v. *Oklahoma,* 221 U. S. 559, 573.

2. That it had been decided by this court, so that the question could no longer be considered an open one, that it was not an infraction of the Fourteenth Amendment for a State to require separate, but equal, accommodations for the two races. *Plessy* v. *Ferguson*, 163 U. S. 537.

3. That the provision of § 7, above quoted, relating to sleeping cars, dining cars and chair cars did not offend against the Fourteenth Amendment as these cars were, comparatively speaking, luxuries, and that it was competent for the legislature to take into consideration the limited demand for such accommodations by the one race, as compared with the demand on the part of the other.

4. That in determining the validity of the statute the doctrine that an act although 'fair on its face' might be so unequally and oppressively administered by the public authorities as to amount to an unconstitutional discrimination by the State itself (*Yick Wo* v. *Hopkins*, 118 U. S. 356, 373) was not applicable, as there was no basis in the present case for holding that any discriminations by carriers which were unauthorized by the statute were practised under state authority.

5. That the act, in the absence of a different construction by the state court, must be construed as applying to transportation exclusively intrastate and hence did not contravene the commerce clause of the Federal Constitution. *Louisville &c. Ry. Co.* v. *Mississippi*, 133 U. S. 587, 590; *Chesapeake & Ohio Ry. Co.* v. *Kentucky*, 179 U. S. 388, 391; *Chiles* v. *Chesapeake & Ohio Ry. Co.*, 218 U. S. 71.

6. That with respect to the existence of discriminations the allegations of the bill were too vague and uncertain to entitle the complainants to a decree.

In view of the decisions of this court above cited, there is no reason to doubt the correctness of the first, second, fourth and fifth of these conclusions.

With the third, relating to § 7 of the statute, we are

unable to agree. It is not questioned that the meaning of this clause is that the carriers may provide sleeping cars, dining cars and chair cars exclusively for white persons and provide no similar accommodations for negroes. The reasoning is that there may not be enough persons of African descent seeking these accommodations to warrant the outlay in providing them. Thus, the Attorney General of the State, in the brief filed by him in support of the law, urges that "the plaintiffs must show that their own travel is in such quantity and of such kind as to actually afford the roads the same profits, not per man, but per car, as does the white traffic, or, sufficient profit to justify the furnishing of the facility, and that in such case they are not supplied with separate cars containing the same. This they have not attempted. What vexes the plaintiffs is the limited market value they offer for such accommodations. Defendants are not by law compelled to furnish chair cars, diners nor sleepers, except when the market offered reasonably demands the facility." And in the brief of counsel for the appellees, it is stated that the members of the legislature "were undoubtedly familiar with the character and extent of travel of persons of African descent in the State of Oklahoma and were of the opinion that there was no substantial demand for Pullman car and dining car service for persons of the African race in the intrastate travel" in that State.

This argument with respect to volume of traffic seems to us to be without merit. It makes the constitutional right depend upon the number of persons who may be discriminated against, whereas the essence of the constitutional right is that it is a personal one. Whether or not particular facilities shall be provided may doubtless be conditioned upon there being a reasonable demand therefor, but, if facilities are provided, substantial equality of treatment of persons traveling under like conditions cannot be refused. It is the individual who is entitled to

the equal protection of the laws, and if he is denied by a common carrier, acting in the matter under the authority of a state law, a facility or convenience in the course of his journey which under substantially the same circumstances is furnished to another traveler, he may properly complain that his constitutional privilege has been invaded.

There is, however, an insuperable obstacle to the granting of the relief sought by this bill. It was filed, as we have seen, by five persons against five railroad corporations to restrain them from complying with the state statute. The suit had been brought before the law went into effect and this amended bill was filed very shortly after. It contains some general allegations as to discriminations in the supply of facilities and as to the hardships which will ensue. It states that there will be 'a multiplicity of suits,' there being at least 'fifty thousand persons of the negro race in the State of Oklahoma' who will be injured and deprived of their civil rights. But we are dealing here with the case of the complainants, and nothing is shown to entitle them to an injunction. It is an elementary principle that, in order to justify the granting of this extraordinary relief, the complainant's need of it, and the absence of an adequate remedy at law, must clearly appear. The complainant cannot succeed because someone else may be hurt. Nor does it make any difference that other persons, who may be injured are persons of the same race or occupation. It is the fact, clearly established, of injury to the complainant—not to others—which justifies judicial intervention. *Williams* v. *Hagood*, 98 U. S. 72, 74, 75; *Virginia Coupon Cases*, 114 U. S. 325, 328, 329; *Tyler* v. *Judges*, 179 U. S. 405, 406; *Turpin* v. *Lemon*, 187 U. S. 51, 60; *Davis & Farnum* v. *Los Angeles*, 189 U. S. 207, 220; *Hooker* v. *Burr*, 194 U. S. 415, 419; *Braxton County Court* v. *West Virginia*, 208 U. S. 192, 197; *Collins* v. *Texas*, 223 U. S. 288, 295, 296.

The allegations of the amended bill, so far as they pur-

port to show discriminations in the conduct of these carriers, are these:

"That notwithstanding the terms of said Act of Congress and of the Constitution of the State of Oklahoma, the said above named defendants and each of them are making distinctions in the civil rights of your orators and of all other persons of the negro race and persons of the white race in the conduct and operation of its trains and passenger service in the State of Oklahoma, in this, to wit: that equal comforts, conveniences and accommodations will not be provided for your orators and other persons of the negro race; that said passenger coaches are not constructed or maintained so as to enable persons of the negro race to be provided with separate and equal toilet and waiting rooms for male and female passengers of said negro race, nor have equal smoking car accommodations, nor separate and equal chair cars, sleeping cars and dining car accommodations by providing for your orators and other persons of the negro race who may become passengers on said railroad, that separate waiting rooms with equal comforts and conveniences have been or are bound to be constructed by said defendants and each of them for your orators and other persons of the negro race desiring to become passengers on said railroad, and that said orators are not being and will not be provided with equal accommodations with the white race under the provisions of said act."

We agree with the court below that these allegations are altogether too vague and indefinite to warrant the relief sought by these complainants. It is not alleged that any one of the complainants has ever traveled on any one of the five railroads, or has ever requested transportation on any of them; or that any one of the complainants has ever requested that accommodations be furnished to him in any sleeping cars, dining cars or chair cars; or that any of these five companies has ever notified any one of

these complainants that such accommodations would not be furnished to him, when furnished to others, upon reasonable request and payment of the customary charge. Nor is there anything to show that in case any of these complainants offers himself as a passenger on any of these roads and is refused accommodations equal to those afforded to others on a like journey, he will not have an adequate remedy at law. The desire to obtain a sweeping injunction cannot be accepted as a substitute for compliance with the general rule that the complainant must present facts sufficient to show that his individual need requires the remedy for which he asks. The bill is wholly destitute of any sufficient ground for injunction and unless we are to ignore settled principles governing equitable relief, the decree must be affirmed.

*Decree affirmed.*

Mr. Chief Justice White, Mr. Justice Holmes, Mr. Justice Lamar and Mr. Justice McReynolds concur in the result.