BLUFORD v. CANADA.
No. 42.

District Court, W. D. Missouri,
Central Division.
April 6, 1940.

708

Charles H. Houston, of Washington, D. C., L. Amasa Knox, Charles H. Calloway, James H. Herbert, and Carl R. Johnson, all of Kansas City, Mo., and Sidney R. Redmond, of St. Louis, Mo., for plaintiff.

Nick T. Cave, of Columbia, Mo., Kenneth Teasdale, of St. Louis, Mo., and William S. Hogsett, of Kansas City, Mo., for defendant.

COLLET, District Judge.

To the petition herein defendant interposed a motion to dismiss on the ground that facts necessary to the relief sought are not stated.

Plaintiff, a negro citizen of Missouri, on January 1st, 1939, and again in August, 1939, duly applied to defendant, Registrar of the University of Missouri, for admission to that institution as a student in the graduate school of journalism. The defendant as Registrar was in complete charge of all registration and admission. Admittance to the University was refused plaintiff by defendant upon the ground that she was a negro. In doing so defendant was carrying out the rules and regulations of the statutory governing body of the University, the Curators of the University of Missouri. The University of Missouri is the only state educational institution in Missouri where graduate instruction in journalism may be obtained. Such instruction is there available to students of the white race. By this action in each of the two counts plaintiff seeks $10,000 in damages from defendant personally for his action in refusing her admittance to the University.

The action is based on Section 1 of the Fourteenth Amendment to the Constitution of the United States,[1] and Section 43, Title

[1] Sec. 1. Amendment XIV, U.S. Const. "Section 1. Rights of citizens—due process of law—equal protection of the laws.—All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

8, U.S.C.A.[2] Jurisdiction of this court is derived from the second clause of subdivision (1) and subdivision (14), of Section 41, Title 28 U.S.C.A.[3]

Missouri has followed the policy of segregating the white and colored races in its public schools.[4] Pursuant to that policy it has built and maintains Lincoln University, a state university for negro students. Prior to the decision in the Gaines case[5] the governing body of Lincoln University was charged with the discretionary duty of providing an opportunity to negro students for instruction and training "up to the standard furnished at the University of Missouri."[6] Subsequent to the decision of the Supreme Court in the Gaines case the Legislature has made that duty mandatory.[7]

In substance the petition states that defendant knew that graduate instruction was not offered at Lincoln University or elsewhere in Missouri except at the University of Missouri upon either of the dates she applied for admission to the University of Missouri; that, therefore, she was entitled under the equal protection clause to admission to the only institution in Missouri at which such instruction was available; that defendant denied her that constitutional right, for which denial she has been given a cause of action against defendant personally by Sec. 43 Title 8, U.S.C.A., supra.

The petition does not allege any demand by plaintiff or any other negro for instruction in journalism at Lincoln University, nor does the petition allege that the governing body of Lincoln University had ample time to furnish those facilities after plaintiff first sought admission to the University of Missouri. The omission is not inadvertent. On oral argument counsel, with complete frankness, stated plaintiff's position to be that although plaintiff should be the first to request the desired instruction she is entitled to it at the University of Missouri instanter, if it be now furnished there to white students and is not immediately available at Lincoln University. If her position is well taken no allegation of advance notice to the authorities of Lincoln University of her desire for the instruction demanded is necessary. On the other hand, if the State be entitled to an opportunity to furnish the instruction at Lincoln Uni-

---

[2] Sec. 43, Title 8, U.S.C.A. "§ 43. Civil action for deprivation of rights. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[3] Sec. 41, Title 28, U.S.C.A. Subdivision (1) 2nd clause. " * * * where the matter in controversy exceeds * * * the sum * * * of $3,000, and (a) arises under the Constitution or laws of the United States * * *."

Subdivision 14, Sec. 41, Title 28 U.S.C.A. "(14) Suits to redress deprivation of civil rights. Fourteenth. Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

[4] Art. XI, Sec. 3, Missouri Constitution, Mo.St.Ann. Sec. 9216, R.S.Mo. 1929, Mo.St.Ann. § 9216, p. 7087. State ex rel. Gaines v. Canada, 342 Mo. 121, 113 S.W.2d 783, Id., Mo.Sup., 131 S.W. 2d 217.

[5] State ex rel. Gaines v. Canada, 305 U. S. 337, 59 S.Ct. 232, 83 L.Ed. 208.

[6] Sec. 9618, R.S.Mo. 1929, Mo.St.Ann. § 9618, p. 7327.

[7] State ex rel. Gaines v. Canada, Mo. Sup., 131 S.W.2d 217. Laws Mo.1939, p. 685, Sec. 9618.

"Sec. [§] 9618. Board of curators authorized to reorganize The Board of Curators of the Lincoln University shall be authorized and required to reorganize said institution so that it shall afford to the negro people of the state opportunity for training up to the standard furnished at the State University of Missouri. To this end the board of curators shall be authorized to purchase necessary additional land, erect necessary additional buildings, to open and establish any new school, department or course of instruction, to provide necessary additional equipment, and to locate the respective units of the university wherever in the State of Missouri in their opinion the various schools will most effectively promote the purposes of this article."

versity before it or its administrative officers (such as the defendant), be convicted of violation of the equal protection clause, then the petition should be amended or defendant's motion sustained.

Plaintiff contends that the question is determined by the opinion of the Supreme Court in the Gaines case. In that case it was definitely determined that provision by the State for higher instruction for negroes, elsewhere than in Missouri, did not satisfy the requirements of the equal protection clause (305 U.S. loc.cit. 350, 59 S.Ct. loc.cit. 236, 83 L.Ed. 208)—the obligation being imposed "upon the States severally as governmental entities." It was also determined that "a mere declaration of purpose, still unfulfilled," was insufficient to meet the constitutional requirement in the absence of a mandatory duty to fulfill that declaration. The discrimination was not excused by its alleged temporary nature id., 305 U.S. loc.cit. 352, 59 S.Ct. loc.cit. 237, 83 L.Ed. 208. Yet the latter expression was in the light of the fact that the State Supreme Court had not construed the obligation of Lincoln University to furnish the facilities as mandatory (id., 305 U.S. loc.cit. 346, 59 S.Ct. loc.cit. 235, 83 L.Ed. 208), "but on the contrary took the view, * * * that the curators were entitled under the state law to refuse such an application and in·its stead to provide for petitioner's tuition in an adjacent State."

■■■ The primary duty and objective of this court is ·to follow the direction of the Supreme Court. That same obligation rested upon the Supreme Court of Missouri upon remand of the Gaines case. When the latter court reconsidered that case in the light of the opinion of the Supreme Court, all indications point to an earnest and sincere purpose to seek the same objective. The direction of the State Supreme Court to the trial court in the Gaines case was that if, at the next school term, the facilities (Law School) at Lincoln University were substantially equivalent to those offered at the University of Missouri the writ should be denied, otherwise the writ was to issue. If the Gaines case should be construed as plaintiff contends, i. e., to give to her the right to enter the University of Missouri on any day when the facilities she demands are not available at Lincoln University, then it must follow that the Missouri Supreme Court did not follow the direction of the Supreme Court when it allowed the authorities at Lincoln

University until the next term to furnish the facilities. It is safe to assert that the State Court had no intention other than to follow the Gaines case, nor can the good faith of the State in carrying out the mandate of that case be questioned in view of the prompt establishment of a creditable law school for negroes. While this court is not bound by the State court's construction of the opinion of the Supreme Court, much respect is due the former court's opinion that the Gaines case did not deprive the State of a reasonable opportunity to provide facilities, demanded for the first time, before it abrogated its established policy of segregation. But if plaintiff's contention be correct, that policy must for practical reasons be abrogated at least during the period necessary for the establishment of the demanded facilities at Lincoln University. The language of the Supreme Court does not imply such a requirement: "It is urged, however, that the provision for tuition outside the State is a temporary one,—that it is intended to operate merely pending the establishment of a law department for negroes at Lincoln University. While in that sense the discrimination may be termed temporary, it may nevertheless continue for an indefinite period by reason of the discretion given to the curators of Lincoln University and the alternative of arranging for tuition in other States, as permitted by the state law as construed by the state court, so long as the curators find it unnecessary and impracticable to provide facilities for the legal instruction of negroes within the State. In that view, we cannot regard the discrimination as excused by what is called its temporary character."

The implication is to the contrary—that absent the discretionary nature of the curators' duty the imminent and mandatory establishment of the facilities would temporarily excuse discrimination. That the curators' duty is now mandatory has been pointed out. Further considerations strengthen the implication:

■■■ The State has the constitutional right to furnish equal facilities in separate schools if it so desires. Plessy v. Ferguson, 163· U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256; McCabe v. Atchison, T. & S. F. Ry. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169. Absent notice and a reasonable opportunity to furnish facilities not theretofore requested, the State's right to follow its established policy is destroyed for reasons noted. Such a

result should not be brought about absent an impelling necessity to secure to the citizen his or her constitutional rights.

"We may add that while all admit that the benefits and burdens of public taxation must be shared by citizens without discrimination against any class on account of their race, the education of the people in schools maintained by state taxation is a matter belonging to the respective states, and any interference on the part of Federal authority with the management of such schools cannot be justified except in the case of a clear and unmistakable disregard of rights secured by the supreme law of the land." Cumming v. Board of Education, 175 U.S. 528, loc.cit. 545, 20 S.Ct. 197, loc. cit. 201, 44 L.Ed. 262.

Furthermore, if plaintiff may maintain this action without alleging previous notice of her desires and opportunity for compliance, will on tomorrow the individual members of the Board of Curators of Lincoln University or the University of Missouri be liable in damages to another negro, if, perchance, late today he or she demands instruction at Lincoln University for which facilities are lacking, and then in the morning demands admittance to the University of Missouri? Yet such would seem to be the result contended for by plaintiff unless the curators should maintain at Lincoln University at all times all departments of instruction, whether used or not, which are available at the University of Missouri. It does not appear that "a clear and unmistakable disregard of rights secured by the supreme law of the land" would result from a failure on the part of those curators to keep and maintain in idleness and non-use facilities at Lincoln University which no one had requested or indicated a desire to use.

Since the State has made provision for equal educational facilities for negroes and has placed the mandatory duty upon designated authorities to provide those facilities, plaintiff may not complain that defendant has deprived her of her constitutional rights until she has applied to the proper authorities for those rights and has been unlawfully refused. She may not anticipate such refusal. Highland Farms Dairy v. Agnew, 300 U.S. 608, loc.cit. 616, 617, 57 S.Ct. 549, 81 L.Ed. 835. Until and unless plaintiff alleges facts which demonstrate an unlawful deprivation of her constitutional rights defendant may not be held liable therefor. Inasmuch as counsel state in effect in their brief submitted in plaintiff's behalf that proof will be made showing that proper application was made to the Board of Curators of Lincoln University and unlawfully denied, opportunity to amend should be given.

The motion to dismiss will be sustained by proper order, unless, on or before ten days from the date hereof, plaintiff's petition is amended to comply with the views hereinbefore set out.