### BROWN et al. v. RAMSEY et al.
### No. 14130.

United States Court of Appeals
Eighth Circuit.

Nov. 17, 1950.

226

J. Robert Booker, Little Rock, Ark., and U. Simpson Tate, Dallas, Tex., for appellants.

John P. Woods, Fort Smith, Ark. (Harry P. Daily and J. S. Daily, Fort Smith, Ark., on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The appellants in this action are Negro children of school age suing by their parents as next friends. The appellees are the members of the Board of Directors of the Fort Smith Special School District of Sebastian County, Arkansas, and the Superintendent of Schools for the District. The appellants instituted this action in the District Court for the Western District of Arkansas for a declaratory judgment and injunctive relief, charging appellees with the practice and custom of denying Negro children educational opportunities and advantages substantially equal to those afforded white children of school age in Fort Smith in violation of the 14th Amendment to the Constitution of the United States. The action is prosecuted for the benefit of appellants and all others similarly situated.

The appellants are twelve in number, six, students of the Lincoln School, the high school for Negro students in Fort Smith; and six students in the elementary schools. Their complaint charges the denial of equal educational facilities and opportunities for Negro students of both high school and elementary school age. But in the course of the trial appellants abandoned the charges of discrimination in schools below the high school level, and amended the complaint to allege that the appellees maintained a junior college for white students above high school age while denying junior college education to the Negro students.[1]

With respect to the high school facilities offered Negro students in Fort Smith, the complaint alleged that they were "compelled to attend one high school, to wit, the Lincoln High School exclusively which school is more than fifty (50) years old and in an unsafe and unsanitary physical condition; that its facilities for educational

1. There were ten plaintiffs in the original complaint. Five of them were dropped when the amended complaint was filed and eight new plaintiffs added. One of the parties plaintiff has not appealed.

purposes are grossly inadequate and unequal in every respect to those provided for white children; that its curriculum is inadequate and unequal to that provided for white children; that it has inadequate and outmoded equipment for teaching shop work; that this machinery is unlike, dissimilar and unequal for educational purposes to the machinery used in schools for white children; that there are no facilities for teaching metal trades, auto mechanics, linotyping, printing, and other crafts and skills which are taught in high schools for white children; that there are no equal facilities for gymnasium; that the courses in home economics are inadequate, unlike and unequal to those provided for white children; that such courses as physics, geometry, business courses and romance languages which are taught in schools for white children are not taught at the school for Negro children;" and generally, the appellants allege that the sanitary and physical conditions of the school buildings for Negro children were inferior and unequal to those provided for white children, and in many respects inadequate, unhealthy, and unsafe.

Appellees' answer put in issue every material allegation of the complaint.

At the conclusion of a trial on the merits, the court entered a final judgment dismissing the appellants' complaint.

■ At the very threshold of this case, we are met with the question of the capacity of the appellants to maintain this action for either declaratory or injunctive relief. "It is the individual who is entitled to the equal protection of the laws * *. * * * It is the fact, clearly established, of injury to the complainant—not to others—which justifies judicial intervention" to protect rights under the 14th Amendment to the Constitution of the United States. McCabe v. A., T. & S. F. Ry. Co., 235 U.S. 151, 161-162, 35 S.Ct. 69, 59 L.Ed. 169. "It is fundamental that these cases concern rights which are personal and present." Sweatt v. Painter et al., 339 U.S. 629, 70 S.Ct. 848, 851; Mc-

Laurin v. Oklahoma State Regents, 339 U.S. 637, 70 S.Ct. 851; Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 351, 59 S.Ct. 232, 83 L.Ed. 208; Corbin v. County School Board of Pulaski County, 4 Cir., 177 F.2d 924, 926; Carter v. School Board of Arlington County, Virginia, 4 Cir., 182 F.2d 531, 535. It is the individual right of each appellant in this case presently existing to equality of treatment and opportunity in the public schools of Fort Smith which the Constitution protects. The individual appellant in this case is entitled to resort to the courts for the protection of a right guaranteed by the 14th Amendment when and only when that right is denied. Courts do not listen to parties who complain of wrongs done to others but not to them. In such a case there is no justiciable controversy between the parties before the court. Cf. Cook v. Davis, 5 Cir., 178 F.2d 595, 599; Watson v. National Life & Trust Co., 8 Cir., 189 F. 872, 884. The Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, authorizes judgments in actual controversies, not advisory opinions in hypothetical cases.

■ It is obvious that the seven appellants enrolled in the elementary schools are not qualified to maintain an action to redress discrimination against students of high school or junior college age. Nor are students of high school age competent plaintiffs in suits charging discrimination against students of junior college age and qualifications. The appellants concede—a concession compelled by the overwhelming weight of the evidence—that Negro students in the elementary schools in the Fort Smith School District are afforded the same educational opportunities and facilities granted white children. None of the plaintiffs in this case are presently qualified to demand of the Fort Smith School District the educational advantages afforded by the junior college. And there is no evidence to show that any of the appellants, or for that matter any Negro citizen of Fort Smith, has ever asked for or been denied a junior college education.[2]

2. The evidence shows and the court found that the Fort Smith Junior College is supported entirely from tuition paid by students and not from public tax funds.

There remains for consideration only the question of discrimination at the high school level.

This action was instituted in December 1948. The amended complaint was filed July 9, 1949, and amended on November 10, 1949, to raise the issue concerning the Fort Smith Junior College. The trial of the case was concluded and final judgment entered on November 19, 1949, nearly one year after the filing of the original complaint. During the time between the filing and trial of this action the Directors of the District were busily engaged in the improvement of the District's school system.

■ The total population of Fort Smith in 1949 was 50,724, made up of 46,742 whites and 3,982 Negroes, the Negro population being 7.8 per cent of the whole. As required by the law of Arkansas, the Fort Smith School District operates separate schools for Negro and white children. The high school for white children is operated in two units known as the Junior High School and the Senior High School. In the Junior High School instruction is given in the three lower high school grades, the 7th, 8th, and 9th; and in the Senior High School, in the three upper grades, the 10th, 11th, and 12th. At the time of the trial the enrollment in the Junior High School was 1,573 and in the Senior High School 1,126. The high school for Negro children is operated as one unit giving instruction in all six high school grades. At the time of the trial the enrollment in the Lincoln High School was 328 students, 139 in the three higher grades. Seventy-four Negro students were nonresidents of the Fort Smith School District. No complaint is made of the operation of Lincoln as a single unit. For schools of the enrollment of Lincoln the single unit operation is the rule and is educationally sound.

For more than twenty years before the beginning of the present action, the Fort Smith School District, because of a provision of the Arkansas Constitution limiting its taxing power, art. 14, § 3, had been compelled to operate its schools with revenues insufficient to meet the demands of a public school system for a growing city. The last housing program in the District, undertaken before the one in progress at the time of this action, was completed in 1929 by the erection of the present Senior High School building. Before the construction of the Senior High School all white students in Fort Smith attended one high school with an enrollment of approximately 2,000, all housed in the building now known as the Junior High School. The building was inadequate for the number of students. In the same year the Lincoln High School had an enrollment not in excess of its present enrollment. The District constructed a new building for the three upper high school grades which became the Senior High School. At the same time the high school for Negro students was reconditioned and largely rebuilt. Thereafter, because of lack of funds, accentuated by the depression of the 1930's and the high prices and shortages prevailing throughout World War II, the District was unable to make any substantial improvements for any of the schools either white or Negro with the exception of a football stadium constructed at the Senior High School with the aid of Federal funds. All schools suf-

---

The Arkansas Constitution and Laws provide only for the operation of public or common schools by common school districts of which the Fort Smith District is one. Common school districts receive some State aid, but their principal source of revenue is local taxation at a rate approved by the electors of the District. Education at the college and university level is provided by the State from revenues derived from various sources. The administration of these institutions is in the hands of the boards appointed by the executive. Whether the Fort Smith School District is authorized under Arkansas law to contribute any of its revenue received from the State and from local taxation to the support of a junior college is at least open to serious question. The Board of Directors of the Fort Smith District has answered this question in the negative. Whether a Negro citizen of Fort Smith who meets the educational requirements for admission to the junior college can be denied admission to the college upon the payment of the required tuition is not presented on this record.

fered from lack of maintenance and adequate facilities.

In 1946 the financial condition of the District began to show improvement. Local property valuations for tax assessments were increased, and an amendment to the State Constitution removing the limitation upon the District's taxing power was proposed and finally adopted in 1948. With the improvement in its finances, the District set about plans for the improvement of all its schools, both Negro and white. From the proceeds of a bond issue of $900,000, the District began a reconstruction program, under way at the time this action was instituted and practically completed at the time of its trial. More than 20 per cent of the money available for improvement of physical properties in the School District was allotted to the Negro schools.[3]

At the inception of the plan for reconstruction, the Board of Directors considered the erection of a new high school building for Negro students, but largely upon the advice of the Superintendent of Negro Schools, a qualified Negro educator of long experience, the holder of a Master's Degree from Columbia University, the plans were changed to provide for the constuction of a new elementary school for Negroes, the reconstruction of the Lincoln High School, and the erection of additional buidings on the Lincoln campus.

At the time of the trial the new elementary school for Negroes was practically completed. It is strictly modern in construction and equipment, superior in both to any white elementary school in Fort Smith and the equal of any elementary school in Arkansas either white or Negro. Also completed was a new building for the home economics department of the Lincoln School, modern in every respect, and in equipment and design the equal of the facilities provided for the Junior and Senior High Schools. At the same time another building on the Lincoln campus to house the industrial arts department was substantially complete. When ready for use this building and its equipment will be in some respects superior to and in all respects equal to the industrial arts department maintained at the Senior High School. The alterations of the Lincoln building were also under way and well advanced at the time of the trial. On the completion of this work the physical defects of which appellants complain will have been remedied. Among these improvements are a new cafeteria building for the joint use of the Lincoln High School and the new elementary school for Negroes, in all respects equal to the facilities provided at the Junior and Senior High Schools, and the correction of sanitary and other inadequacies.

The difference in the high school buildings for white and Negro students, with the exceptions hereafter noted, are such as necessarily result from the difference in the number of students served. The white high schools serving from four to five times as many students as the Negro high school have larger auditoriums, gymnasiums, and libraries. But the evidence fails to show that these facilities at the Lincoln School are not adequate for the number of students which they serve. The proof is that the School District furnishes any equipment needed for these facilities at the Lincoln School.

Appellants offered no substantial evidence to show that with the completion of the reconstruction program at the Lincoln High School its facilities will be unequal to those afforded the whites at the Junior and Senior High Schools. They offered no evidence to show that the work under way would not be speedily and certainly completed. They admit that they were aware of the plans for improvement of the Lincoln High School facilities at the time this action was instituted. Their argument in the District Court and here is that appellants were entitled to the relief prayed for because of the inadequacies of the Lincoln School existing at the time this action was instituted; or, if not, because at the time of the trial the reconstruction program undertaken in good faith and prac-

---

3. At the time of the trial the School District had negotiated a second bond issue for $500,000, the proceeds of which were not immediately available.

tically complete had not reached the stage at which all of the new facilities were immediately available for use. In short, their contention seems to be that appellants are being denied equal accommodations because of the inconvenience and interruptions due to the reconstruction program which they demand and ask the court to order and to declare them entitled to receive.[4] The District Court rightly found no merit in this contention. Cf. Carr v. Corning, 86 U.S.App.D.C. 173, 182 F.2d 14, 20, 21.

The only difference in the facilities in the white and Negro schools in Fort Smith remaining after the completion of the work of improvement is that at the Senior High School there is a football stadium and in the old Junior High School building there is a swimming pool, while neither is provided at the Lincoln High School. But here also it is to be remembered that the Senior High School has an enrollment of approximately 1,200 students, whereas the Lincoln High School's enrollment in the senior grade is only 139. The Lincoln High School has not in many years attempted to maintain a football team. In the past when it had a football team permission was granted for the use of the stadium at the white high school. The evidence shows that the officials of the Fort Smith School District are willing to provide any athletic facilities at the Lincoln High School for which there is any demand. As for the swimming pool at the Junior High School, the Board has under consideration closing the pool and devoting the space to other needed use. A doctor, recently elected a member of the Board of Directors of the School District, testified that the Junior High School swimming pool is unsafe for use according to modern health requirements, a menace rather than an advantage to the health of the students who use it.

On the question of equality in buildings and equipment the District Court made the following findings of fact:

"19. The buildings and other physical facilities at the Lincoln High School, upon the completion of the buildings and new installations now almost ready for occupancy and use, will be superior to the buildings and appurtenant physical facilities at the Junior High School and will be on a substantial equality with the combined Junior and Senior High School buildings and appurtenant physical facilities."

"22. There is no discrimination, existing or imminent, against the children of the negro schools of the Defendant District in the matter of buildings and appurtenant physical facilities."

The findings are fully supported by the evidence.

We turn to the evidence concerning the quality of instruction in the high schools. The proof shows and the court found that the faculty members of the Negro high school are equal to those of the white high schools of the District with respect to educational training and qualifications, experience and salaries paid; that both Lincoln High School and the Senior High School are accredited by and have equal standing in the North Central Association of Colleges and Secondary Schools. A graduate of either high school is entitled to admission to any college or university in the United States upon certificate of the school, excepting those schools of higher education which require entrance examinations as a condition to the admission of any student. The State Department of Education gives to the Lincoln High School a rating equal to that of the Senior High School and equalled only by two other high schools for Negroes in the State.

Competent educators, both Negro and white, testified that the courses of study and educational opportunities offered at the Lincoln High School substantially equalled those offered at the Junior and Senior High Schools for whites. No witness to the contrary was offered by appellants. The trial court found that the cours-

4. It is on this ground that counsel for appellants press in this court the argument that the District Court erred in overruling their motion for summary judgment.

es of study offered students at the white and Negro high schools were of substantial equality. It appears, however, from the admission of the Superintendent of Instruction for the District that certain courses of instruction are offered at the white Senior High School which are not offered at the Lincoln High. This situation is due to the policy of the District, well established by the evidence, to provide courses in high school subjects for white and Negro students only when a sufficient number of students request the instruction to justify its expense. Superintendent Ramsey, who exercises general supervision over all the schools both white and Negro, and Professor Green, who has immediate supervision of education in Negro schools, testified to the policy of the Board to provide any course requested by a sufficient number of students. The necessary number varies from 8 to 15, depending upon the particular course requested.

■ The natural result of this policy is that in the white high school with an enrollment of approximately 1,200 students the demand for some particular type of instruction may arise with a sufficient number of applicants to justify its installation, while the required number would not apply at the Lincoln High School with an enrollment of 139. A study of the cases cited in this opinion shows that this policy might result in a denial to a Negro student of the equality of treatment commanded by the 14th Amendment. That command in this case is that any individual Negro student qualified for a particular course of instruction afforded to white students is entitled of right to the same instruction, even though in the Negro school he is the sole applicant for it. The character of education made available to the Negro students can not be made to depend on the number of qualified applicants. Carter v. School Board of Arlington County, Virginia, supra, 182 F.2d at pages 535–536; McCabe v. A., T. & S. F. Ry. Co., supra,

235 U.S. at page 161, 35 S.Ct. 71, 59 L. Ed. 169.

But we are not concerned with hypothetical issues. The question here is whether any of the appellants have been or are being denied the equality of treatment to which they are entitled. The allegations of the complaint and the evidence concerning courses of instruction are directed to an alleged custom or practice which may conceivably result in the denial of equal treatment to some Negro student at some time, rather than to an actual denial suffered by any of the appellants. Of the six appellants who are enrolled in the Lincoln High School only two appeared as witnesses. Neither testified to the denial of any course of instruction which the witness or other appellant applied for or offered to take.[5]

We conclude that the judgment of the District Court dismissing the action is correct.

Judgment affirmed.

5. The nearest approach to proof of discrimination in courses of study offered in the Lincoln High School is found in the testimony of one of these appellants. This witness testified that when she took chemistry at Lincoln she was without the benefit of a laboratory. But she stated that the laboratory was then in process of construction.