Ozzie **HACKETT**

v.

**McGUIRE BROTHERS, INC.** and Local Union No. 187, Commission Salesmen, Drivers and Helpers of the International Brotherhood of Teamsters.

Civ. A. No. 70–165.

United States District Court,
E. D. Pennsylvania.

Oct. 1, 1970.

Edward Davis, Philadelphia, Pa., for Local Union No. 187.

John H. Leddy, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for McGuire Bros., Inc.

Harvey N. Schmidt, Community Legal Services, Philadelphia, Pa., for plaintiff.

## OPINION AND ORDER

HANNUM, District Judge.

Presently before this court are the defendants' Motions to Dismiss. This action is brought pursuant to §§ 706(e) and (f) of the Civil Rights Act of 1964, §§ 2000e–5(e) and (f) of Title 42 U.S. C., § 1981 of Title 42 U.S.C. and §§ 1331 and 1343(4) of Title 28 U.S.C., to enjoin and redress alleged violations of the plaintiff's rights to equal employment opportunity.

The plaintiff, Ozzie Hackett, a Negro, was hired by Eddowes—Star Laundry in 1937 as a driver's helper and, subsequently as a driver. He was the only Negro employed by Eddowes—Star Laundry from the date he was hired until he was discharged. Eddowes—Star Laundry became a wholly owned subsidiary of McGuire Brothers, Inc., known as Star Industrial Laundry, Inc. (hereinafter "Star") when McGuire purchased substantially all the Eddowes—Star assets in 1953. Hackett was admitted into Local Union No. 187, Commission Salesmen, Drivers and Helpers of the International Brotherhood of Teamsters in 1945. The plaintiff was discharged by McGuire on June 23, 1967. On October 9, 1967 Hackett filed a charge of unlawful discrimination with the Equal Employment Opportunities Commission. The EEOC determined, on October 9, 1969, that there was no reasonable cause to believe that McGuire had committed an unlawful employment practice.

This action was brought on behalf of the plaintiff and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class of persons which plaintiff claims to represent is all Negro persons who apply for employment or who might be employed by McGuire at any of its facilities, and Negro persons who are or might become members of Local 187.

The complaint alleges that McGuire maintained separate lines of seniority and vacation schedules for certain former employees of Eddowes—Star, including plaintiff, which practices were maintained because of Hackett's race and adversely affected his conditions of employment. The plaintiff further alleges that he was subjected to harassment and intimidation during the period of his employment, and that he was subsequently discharged solely because of his race. As against Local 187, the complaint charges that the union was aware of the separate seniority lines, vacation schedules and harassment of the plaintiff but made no attempt to protect Hackett, in breach of its duty to protect the rights of all its members regardless of race. Furthermore, the complaint charges that Local 187 acquiesced in Hackett's discharge and made no at-

tempt to secure either reinstatement or other employment for him. The plaintiff's prayer for relief requested that he be reinstated to his former position with back pay and seniority rights, a money judgment for damages, and an order enjoining the defendants from further discrimination against the plaintiff and the class he represents.

■ The defendants filed respective motions to dismiss on the grounds that the plaintiff failed to comply with the statutory time limits under the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(a) (b) (d) and (e), that the complaint failed to state a proper class action, and that the Civil Rights Act of 1964 makes no provision for compensation by way of damages.[1] A hearing was held on these Motions to Dismiss at which time the fact emerged that the plaintiff had voluntarily retired on November 1, 1969 and had been receiving a pension since that time. Supplemental memoranda were filed by all parties concerning the effect of this retirement on the plaintiff's status in this case.

■ The court finds that this suit must be dismissed as the plaintiff lacks standing to sue. The Civil Rights Act is directed at the protection of rights of persons having an employment relationship, or a potential employment relationship, with an employer. In order to have standing to sue, an aggrieved person must fall within one of these categories. If not, he is not in a position to be harmed by the practices which the Act seeks to prevent.

■ Ozzie Hackett is not an employee within the meaning of the Act. Section 701(f) of the Civil Rights Act merely defines the term "employee" as "an individual employed by an employer". There is no authority on the question of whether a retired employee retains his status as an employee for purposes of bringing suit under the Act. It is therefore appropriate to look to other sources to determine the plaintiff's status. Upon retirement, the plaintiff agreed to be bound by the rules and regulations of the Pension Agreement. Section 1.13 of the Trust Agreement upon which the Pension Plan is predicated defines Pensioner as follows:

> "Pensioner shall mean a former Employee who has been retired with a retirement pension in accordance with this Agreement, and a Pensioner shall not thereafter be considered as having employee status."

The legal status of a pensioner has most recently been considered in Pittsburgh Plate Glass Co., Chemical Division v. NLRB, No. 19875, 427 F.2d 936 (6th Cir. June 10, 1970). Although this case concerns itself with the status of a retired person under the National Labor Relations Act, the conclusion of the court, especially in light of the section of the Trust Agreement quoted above, is equally applicable in the instant case. The court there stated:

> "Retirement with this Company, as with most other companies, is a complete and final severance of employment. Upon retirement, employees are completely removed from the payroll and seniority lists, and thereafter they perform no services for the employer, are paid no wages, are under no restrictions as to other employment or activities, *and have no rights or expectations of re-employment.*" (emphasis added)

In addition to holding that the plaintiff is no longer an employee for the purposes of the Civil Rights Act, it is also clear that by voluntarily retiring

---

1. The defendants also moved to dismiss on the ground that since the Equal Employment Opportunity Commission had found no reasonable cause to believe that a violation of the Civil Rights Act had occurred, this court did not have jurisdiction. However, since the recent Third Circuit decision in Fekete v. United States Steel Corporation, 424 F.2d 331 (3d Cir. 1970), it is clear that there is no requirement that the Commission make a finding of reasonable cause as a prerequisite to bringing suit in the District Court. This ground for dismissal was therefore abandoned.

and accepting a monthly pension, the plaintiff is not within the category of potential employees who would be injured by discriminatory hiring practices of the defendant if such were found to exist. The plaintiff here has voluntarily relinquished his rights or expectations of re-employment or reinstatement prior to the time this suit was filed by applying for and accepting retirement benefits.

The plaintiff cites several cases for the proposition that his retirement does not render his claim for injunctive relief and reinstatement moot. See, Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968); Banks v. Lockheed-Georgia Co., 46 F.R.D. 442 (N.D.Ga.1968); Parham v. Southwestern Bell Tel. Co., 58 L.C. ¶ 9147 (E.D.Ark.1968).

In each of these cases the courts held that a change in circumstances as to the representative member of the class after the suit was instituted did not moot the class actions seeking injunctive relief. Although the individual's claim for relief had become moot, once a civil rights action had been instituted the representative member of the class became a "private attorney general" to prosecute the claim for injunctive relief on behalf of all other members of the class. Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). These cases, however, are distinguishable from the present case. We are not here concerned with a post-suit conciliation agreement between the employer and the plaintiff-employee. Mootness is not in issue. The plaintiff here voluntarily altered his position by retiring *prior* to the filing of this suit and thus lacks standing to sue in the first instance.

Although a class action for injunctive relief is certainly permissible, and often desirable, under the Civil Rights Act, that class action must meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. It is elementary that a party may not represent a class of which he is not a member. *See, e.g.,* McCabe v. Atchison, T. & S. F. R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169 (1914). The class which the plaintiff seeks to represent herein is Negro persons who apply for employment or who might be employed by the defendant McGuire, or who may become members of Local 187. Since his retirement, the plaintiff is no longer in a position to represent this class. As the retirement occurred prior to the institution of this suit, the plaintiff has lacked standing from the outset so the "private attorney general" concept is not applicable to save the class action.

The court is mindful of the salutory purpose of the Civil Rights Act and the high priority which Congress placed on furthering the underlying policy of the Act. However, the fact of the plaintiff's voluntary retirement, and the terms of the retirement agreement itself, should not be totally disregarded. The plaintiff had the option of pressing his claims in court to determine the validity of his charges of discrimination and unlawful employment practices. He chose instead to apply for and accept the retirement benefits under the Pension Plan.

Since it has been found that the plaintiff lacked standing to sue under the Civil Rights Act in the first instance, it is unnecessary to pass upon the remaining points in the defendants' Motion to Dismiss.

## ORDER

And now, this 1st day of October, 1970, it is hereby ordered that the defendants' Motion to Dismiss is granted.