[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1141 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1142 
 Division B. On Rehearing.
1. An admission in an answer to an alternative writ of mandamus that the railroad commissioners made an order as alleged in the writ, is construed as admitting the making of the order but not its reasonableness or legality, when the latter is challenged in other averments of the answer.
2. A denial that the findings of the railroad commissioners was based upon a preponderance of the evidence submitted at the hearing, and that the facilities and accommodations of the respondent railroad company are inadequate to meet the safety, convenience and comfort of passengers and the proper handling, care, protection and prompt delivery of freight and an averment that existing facilities and accommodations are adequate, are insufficient to overcome the statutory presumption in favor of the order of the railroad commissioners requiring stated depot facilities to be provided.
3. Mere averments of meagre facts or conclusions as to the adequacy of the present facilities and the unreasonableness of the order of the railroad commissioners requiring specified facilities to be provided, are manifestly insufficient to overcome the order in view of the statutory provision that the order of the Commissioners "shall be deemed and held *Page 1143 
to be within their jurisdiction and their powers, and to be reasonable and just and such as ought to have been made in the premises and to have been properly made and arrived at in due form of procedure and such as can and ought to be executed, unless the contrary plainly appears on the face thereof or be made to appear by clear and satisfactory evidence, and shall not be set aside or held invalid unless the contrary appears."
4. A return to a sufficient alternative writ of mandamus must state all the facts relied upon by the respondent with such precision and certainty that the court may be fully advised of all the particulars necessary to enable it to pass upon the sufficiency of the return; and its statements cannot be supplemented by inference or intendment.
5. Averments that may justify an inference that an order of the railroad commissioners is unreasonable in its scope, are insufficient since the law requires the order to be enforced unless it be made to appear by clear and satisfactory evidence or by admitted averments of facts having the probative force of clear and satisfactory evidence, that the order is unreasonable.
Rehearing denied.
W. J. Oven, for Petitioner;
Fred H. Davis, contra.
This is a proceeding by Mandamus on the petition of the Railroad Commission of Florida to require the Seaboard Air Line Railway Company, a corporation, to provide freight and passenger depot facilities at Dade City, Florida. The writ required compliance with the Railroad Commission's Order No. 810 and directed the railroad company as follows:
(1). To move your present combination frame depot at *Page 1144 
Dade City, Florida, south from its present site and locate the same, for freight service, approximate to the north boundary line of Church Street in said City and adjacent to your rails on the lands belonging to your Company, so as to make the present depot site available for the building of a new passenger depot.
(2). To erect and construct a new passenger depot at Dade City, Florida, to be located on the site of the present depot, the north wall of said new depot to begin approximately forty feet from the south curb line of Meridian Street.
(3). To provide such new passenger depot with the following facilities:
(a). A waiting room for white passengers, to contain not less than 600 square feet of floor space.
(b). A rest room for white women, to contain not less than 85 square feet of floor space, and to be connected with and open into the waiting room for white passengers.
(c). A toilet for white women to contain not less than 45 square feet of floor space, and to be connected with and open into said rest room for white women.
(a). A smoking room for white passengers, to contain not less than 85 square feet of floor space, and to be connected with and open into the waiting room for white passengers.
(e). A toilet for white men, to contain not less than 45 square feet of floor space and to be connected with and open into said smoking room for white passengers.
(f). A waiting room for colored passengers, to contain not less than 500 square feet of floor space.
(g). A toilet for colored women, to contain not less than 48 square feet of floor space and to be connected with said waiting room for colored passengers. *Page 1145 
(h). A toilet for colored men to contain not less than 48 square feet of floor space and to be connected with said waiting room for colored passengers.
(i). A hard-surfaced platform, of reasonable width and of standard height above rails, to completely surround said new passenger depot, the roof of said depot to project over said platform in all directions so as to afford reasonable shelter for passengers using said platform.
(j). A canopy shed to commence at the south end of said new passenger depot and to extend north (between said depot and the rails) alongside of and adjacent to the track nearest to the south curb line of Meridian Street in said City; the floor of said canopy shed to be suitably hard-surfaced and of standard height above rails.
(k). A suitable ticket office with ticket windows opening into the waiting room for white passengers and a ticket window opening into the waiting room for colored passengers.
(1) A suitable baggage room of sufficient dimensions to reasonably accommodate the traffic."
The writ was issued on the 3rd day of April, 1925. The order by the Railroad Commission was made on the 23rd day of October, 1924. The respondents filed their return to the writ on May 1st, 1925. The return admitted the allegations upon which the writ was based, but alleged in effect that the order made by the Railroad Commission in that behalf was void and unenforceable, first because it was arbitrary, unreasonable and confiscatory; and, second, because the Railroad Commission is without jurisdiction to make or enforce such an order because of what is known as the Transportation Act of 1920 passed by Congress to regulate commerce.
Motion was made by the relators for the issuance of a peremptory writ, the return notwithstanding. Such motion *Page 1146 
is equivalent to a demurrer to the return and therefore involves the determination of whether or not the allegations of the return are sufficient to preclude the issuance of the writ. State ex rel. Burr et al. v. S. A. L. Ry. Co. et al., ___ Fla. ___, 104 So. 602.
This case was instituted before the decision by this Court in the case of the State ex rel Burr v. S. A. L. Ry. Co. et al.,supra, and therefore before this Court had settled the question as to the effect of what is known as the Transportation Act of 1920 upon the jurisdiction of the Railroad Commission in cases like the one involved. And since this question has been settled by this Court against the contentions of the respondent, it is no longer contended that the Railroad Commission was without jurisdiction in the premises.
The law as to the scope and power of the Railroad Commission in such cases is so clearly and fully stated in the able opinion written by Mr. Justice TERRELL and in the concurring opinion written by Mr. Justice WHITFIELD in the case of the State ex rel. Burr v. S. A. L. Ry. Co. et al., supra, that the writer feels it is entirely unnecessary to attempt to restate the principles of law there stated applying to this case.
It appears that the only question to be determined by this Court is whether or not the order made by the Railroad Commission and which is sought to be enforced by mandamus is so arbitrary, unreasonable, unfair or confiscatory in its terms as to be void and unenforceable.
In support of the contention that the order is of such a nature, the respondents represent that to carry out the terms of the order it will be necessary for it to expend the sum of $20,000 in the construction of a new building and shed and the further sum of $1,800 in moving and resetting the house now used as a depot and that it will thereby *Page 1147 
lose the use of some 250 feet of its trackage facilities for house and team track service of the value of $500.00 or more, and it is alleged in the return that the expenditure is out of fair proportion to the revenue derived from this station. The return shows that the revenue derived from this station for freight and passenger service in 1916 was $26,061.73 and that the revenue from the same source in 1924 was $78,124.37. This shows $60.82 less than an advance of 300 per cent in the nine-year period. The respondent has not alleged that its depot facilities at Dade City, Florida, are either adequate, safe or convenient. It has not alleged, except by inference, that the facilities required by the order are in excess of the reasonable requirements of the location to meet its present and reasonably to be expected future needs.
A great part of the return is given to the insistence that the requiring of the construction of sheds along the track for the safety, convenience and comfort of passengers is an unreasonable and arbitrary exercise of the power of the Commission. This question has been so fully disposed of in the case of the State ex rel. Burr v. S. A. L. Ry. Co., supra, that it is not needful to further discuss that contention.
It appears to us that the remaining contentions made by the respondent are as well settled by former opinions of this Court as is the one just referred to. In the case of the State v. L. N. and S. A. L. Ry. Co., 62 Fla. 315, 57 So. 175, this Court say:
"A railroad common carrier may, in addition to the facilities and accommodations already furnished, be required to render a particular service that it is essentially the duty of the carrier to do for the reasonable convenience of its patrons among the public, and to meet the reasonable requirements of the public service undertaken. Even *Page 1148 
though such a particular duty if enforced would be in itself unremunerative and burdensome, such a result would be an incident to the service voluntarily undertaken, in consideration of the franchises permitted to be used for the public good, and the property rights of the carrier would not thereby be unlawfully invaded, if the particular service is reasonably necessary for the public convenience, and the burden to the carrier has some fair relation to the benefits accruing to the public, and the burden of the particular service, considered with reference to the entire business of the carrier, does not in reality amount to a denial to the carrier of a reasonable compensation for the service rendered by it as an entirety. * * *"
Where it appears that a particular service is a duty vitally necessary to the public, and its performance is essential in adequately rendering a general public service as common carrier, the fact that the performance of the particular duty will be unremunerative will not in view of the nature of the duty to the public excuse non-performance. * * *"
If such particular regulations are reasonably useful and expedient for the just requirements of the public service being performed by the respondents, thereby making it a duty of the carrier to render the service, the regulations if not illegal may be enforced even though the service required is not remunerative, unless it is made to clearly appear that the particular regulations are so unreasonable and arbitrary that their enforcement will operate to deny to the respondents a reasonable compensation for the entire service rendered by the carrier. * * *"
In determining whether the burden of a particular regulation enforced by State authority is confiscatory and unlawful because it prevents a railroad company from receiving a reasonable compensation for the service rendered *Page 1149 
taken as an entirety, the fair actual value of all the property and labor and management rightly used in rendering the service should be considered. * * *"
In the case of the L. N. Railroad Co. v. The Railroad Commission, 63 Fla. 491, 58 So. 543, the Court say:
"It is the duty of the carrier to anticipate the needs of the public and to provide appropriate and reasonably adequate facilities and accommodations to meet the present and prospective demands for the safety, comfort and convenience of the public who have a right to use the facilities and accommodations. The reasonable requirements of a growing community or of an increasing business should be anticipated by a carrier in the performance of its public duty."
 In the case of the State v. L. N. Railroad Co., 57 Fla. 522; 49 So. 43, the Court say:
"Even where a particular regulation causes a pecuniary loss to the carrier, if it is reasonable with reference to the just demands of the public to be affected by it and it does not arbitrarily impose an unreasonable burden upon the carrier, the regulation will not be a taking of property in violation of the Constitution."
In the case of the State el rel. Railroad Commissioners v. F. E. C. Railroad Co., 67 Fla. 83, the Court say:
"In determining whether a rate, rule, regulation or order of the Railroad Commission upon a subject within its authority is so unreasonable and arbitrary as to be illegal and unenforceable, the court, in deference to the governmental functions conferred by law upon the Commissioners, will not only require the prima facies, of reasonableness impressed by the statute upon the rate, rule, regulation or order to be overcome by admission or proofs, but will require the admissions or proofs of facts tending to show unreasonableness to be clear and convincing, every *Page 1150 
reasonable doubt being yielded in favor of the rate, rule, regulation or order.
The reasonableness of a rate, rule, regulation or order of the Railroad Commissioners is to be determined by a consideration of the rights of all parties directly and materially affected by the rate, rule, regulation or order. This involves a consideration of all the facts and circumstances by such appropriate processes and standards of reasoning and computation as are afforded by law or by common experience and the dictates of right and justice. * * *"
"A proper test is not whether the facilities required by the order are in fact necessary, but whether they are reasonable for the convenience and safety of the public to be served, and the expense to the carrier is not so unreasonably out of proportion to the convenience afforded to the public as to impose an unlawful burden upon the carrier." * * * * * * *
The facts properly pleaded in the return are taken as admitted by the motion for the peremptory writ notwithstanding the return, and such admitted facts do not clearly and convincingly overcome the prima facie effect under the statute of the finding by the Railroad Commission, after taking testimony and making a personal examination of the premises, that the present facilities are insufficient for the safety, convenience and comfort of the public to be served at the point named, nor to overcome the prima facie effect of the finding of the Commissioners that the facilities required in the order are reasonably necessary for the safety, convenience and comfort of the public which is to use such facilities at present and in the future.
A peremptory writ will issue.
 ELLIS, C. J., AND WHITFIELD AND STRUM, J. J., concur. *Page 1151 
TERRELL AND BROWN, J. J., dissent.