STATE ex rel. AMERICAN UNITED LIFE INSURANCE COMPANY, a corporation, etc., v. OTIS L. HOWELL, et al., COUNTY COMMISSIONERS OF SARASOTA COUNTY, et al.

13 So. (2nd) 214                                    January Term, 1943
May 4, 1943                                         En Banc

D. C. Hull, Hull, Landis Graham & French, for appellant. Winder H. Surrency, for appellees.

ADAMS, J.:

Appellant proceeded by mandamus to coerce the County Commissioners of Sarasota County to levy ad valorem tax to pay interest and principal on certain road bonds. To the Commissioners' return relator demurred. The demurrer was overruled and from final judgment entered on the latter order, this appeal was taken.

The decision here turns upon whether the return was sufficient, the substance of which is: That in March, 1942, the statutory Board of Administration passed a resolution declaring that in the event proposed Section 16 to Article IX of the Constitution was adopted at the general election of 1942, it would be unnecessary for an ad valorem levy to be made to the Governor, as president of such Board, also recommended that no levy be made because the State Board had resolved to exercise its authority under Chapter 20946, Acts 1941, by using sinking funds of other counties to purchase bonds maturing if and when county funds were insufficient. The return showed available funds to the credit of other counties which might be so utilized. The return alleged that none of the principal or interest of the bonds was in default. It appeared that both the county board and the board of administration were cognizant of their bond requirements; that substantial funds were on hand and other funds would be coming in from excise tax which could be used for bond purposes.

The demurrer admitted the facts well plead in the return. It, therefore, appears that there were substantial facts upon

which the trial judge could have exercised his discretion in denying the relief. The relator complains that the alleged defense does not constitute an allocation of funds which could be reached by judicial process to satisfy his bonds, and also should the maturing bonds be purchased they would still be outstanding and unpaid.

It is quite true that the action of the statutory board of administration, as it then existed and as it now exists, (the proposed Section 16, Article IX, having been adopted) did not amount to an allocation of funds to the extent that they might be reached by judicial process. We are dealing, however, with a board of the highest dignity in the State whose only object and purpose is to serve both the bondholder and the taxpayer. To better serve both in the long run, it must endeavor to meet all obligations at maturity with the least amount of tax burden. Therefore when it appears that there are at present no defaults, that the board in its judgment has made provision for future requirements and has no reason to anticipate any defaults, it will take a strong showing to overturn the trial court's judgment based on such showing.

Relator is also correct that the proposed purchase of the bonds in event of insufficient funds to pay them is not payment, yet in this transaction relator has lost no part of the security for the remainder of the bonds. He has a right to receive his money at maturity and until then have his security unimpaired. He will not be allowed to refuse payment from a source other than that expressly pledged to him. Neither may he prevent the county from obligating itself elsewhere to obtain funds with which to pay him. Chapter 20946, Acts 1941, *supra,* was in effect, embodied into our Constitution by the adoption of Section 16, Article IX. By the adoption of the latter amendment the people irrevocably allocated a source of revenue not therefore pledged for a period of fifty years. The effect of this was to better secure the bondholder and alleviate the immediate burden to the property owner.

Notwithstanding the above, relator claims the right to enforce a levy in order to insure the marketability of his bonds. When provision has been made to meet the bond re-

quirements, it naturally follows that the marketability of his bonds is made secure. Well informed and fair minded people may differ as to whether the marketabilitiy of the bonds is better maintained under the present set-up under Section 16, Article IX, or prior thereto. When this question is viewed in the light of the history of bond and tax problems over the past decade in this State, we cannot escape the conclusion that relator's bonds enjoy greater security under the present set-up than at any other time.

From a review of the whole record, we find no abuse of discretion by the lower court, hence the judgment is affirmed.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN, THOMAS and SEBRING, JJ., concur.