47 So.2d 608 (1950)
STATE ex rel. HAWKINS
v.
BOARD OF CONTROL OF FLORIDA et al.
Supreme Court of Florida, en Banc.
August 1, 1950.
*609 Alex Akerman, Jr., Orlando, for relator.
Richard W. Ervin, Attorney General, and Frank J. Heintz, Assistant Attorney General, for respondents.
SEBRING, Justice.
The relator, Virgil D. Hawkins, is a Negro citizen and resident of the State of Florida. He possesses all the scholastic, moral and other qualifications, except as to race and color, prescribed by the laws of Florida and the rules and regulations of the State Board of Control for admission to the first year class of the College of Law of the University of Florida.
In April 1949 Hawkins applied for admission to the University of Florida, for attendance at a summer session of the first-year law class to begin in the summer of 1949. His application was denied by the Board of Control, the governing body of the State University system, solely because of certain provisions of the Constitution and statutes of Florida prohibiting the admittance of any but white students to the University, including the Law College. Hawkins thereupon instituted this mandamus action against the members of the Board of Control, alleging the matters above set forth, averring that the College of Law of the University of Florida is the only tax-supported law school in the State of Florida, and charging that the refusal of the governing authorities to admit him to the College of Law solely because he was a Negro constituted an arbitrary and illegal denial of the equal protection of the law guaranteed him by the Fourteenth Amendment to the Federal Constitution.
In due course the members of the Board of Control filed their return to the alternative writ issued in the cause, setting up as an answer to the charges made by the relator that under the Constitution and laws of the State of Florida only members of the white race may be lawfully admitted as students to the University of Florida and hence that the Board had no choice other than to deny the application of the relator; that after relator's original application for admission to the 1949 Summer Term of the first year law class, which term had expired prior to the filing of the answer, no further application had been made by him for admission to any subsequent term or semester of the University and hence that the Board did not have before *610 it when it filed its answer any application by the relator for instruction in any course in any institution, nor was the Board advised as to whether relator desired instruction in his requested courses at any future term or semester at any State institution of higher learning; that at the time of his application for admission to the University, the relator was informed that because there was no actually functioning state supported institution of higher learning in Florida open to members of the Negro race which offered the courses desired by the relator, the Board was prepared to provide for him such courses of study at a college or university agreeable to him in another state, fully equal and as valuable as any such course offered at any tax-supported school in the State of Florida.
For further answer to the writ the respondents alleged, that the Constitution and statutes of the State of Florida provide that white and Negro students shall not be taught in the same schools but that impartial provision shall be made for both and that in pursuance of these requirements the State of Florida has established certain institutions of higher learning in the State, among which are the University of Florida, at Gainesville, Florida, and the Florida State University, at Tallahassee, Florida, both maintained for white students, and the Florida Agricultural and Mechanical College for Negroes, at Tallahassee, Florida, maintained exclusively for Negroes; that these three state institutions have been in operation for many years and are under the management and control of the Board of Control, subject to the supervising power of the State Board of Education, who, through a long established and fixed policy of providing substantially equal educational opportunities to white and Negro races alike have from time to time added additional schools and courses of instruction at each of these institutions as the need for such additional schools and courses have been made to appear; that whatever rights the relator may have for instruction in his requested courses at a state operated institution of higher learning within the State, should it be determined by the court that he has such rights, would be at the Florida Agricultural and Mechanical College for Negroes and could not be lawfully given him at the University of Florida; that in pursuance of the long-established policy of the State to make impartial provisions for instruction to members of the white and Negro races alike, where the need for such instruction is made to appear, the Board of Control had set up and established, on December 21, 1949  a date subsequent to the date of the institution of this suit but prior to the time that the Board of Control was required to make its answer  a school of law at the Florida Agricultural and Mechanical College for Negroes and had directed the governing head of said college to acquire the necessary personnel, facilities and equipment for such course of instruction at the school on the earliest possible date; that if, as authorized in the resolution establishing the school of law at the Florida Agricultural and Mechanical College for Negroes, "the relator still declines to accept out-of-state scholarship or other provision which may be made for his instruction in the courses he has requested elsewhere than at a State institution established for white students exclusively, and it should be held that said arrangement is insufficient to satisfy the relator's lawful demands, the respondent, Board of Control, has made provision for relator's immediate admission and enrollment at the Florida Agricultural and Mechanical College for Negroes, in its law school, established at that institution, and is ready to there admit him, provided the relator shall make his application for instruction in said course within the time allowed for members of any other group to apply for admission to said course at any State institution of higher learning. And, in the event the necessary facilities, equipment and personnel for said course of study should not be immediately available at the Florida Agricultural and Mechanical College for Negroes in Tallahassee, upon his renewed timely application for instruction in said course of study, the Board of *611 Control has made provision for his instruction in said course of study, as in said resolution provided, at the only other institution of higher learning in the State of Florida offering such course, until such time as adequate and comparable facilities and personnel for such course of study, substantially equal to those provided at any tax-supported institution of higher learning in the State, can be obtained and physically set up at the Florida Agricultural and Mechanical College for Negroes, in Tallahassee, Florida."
Upon the coming in of the answer the relator moved for the issuance of a peremptory writ of mandamus, the return of the respondents notwithstanding, and the cause is now before this court for final disposition.
As to the effect to be given the motion for the issuance of the peremptory writ the return of the respondents notwithstanding, it is well to state at the outset that under our decided cases such a motion stands as the equivalent of a demurrer to a pleading in a law action. It operates as an admission by the relator of the truth of the facts well pleaded by the respondent but claims that in law the return presents no sufficient reason why the relief sought in the alternative writ should not be granted. Lamb v. Harrison, 91 Fla. 927, 108 So. 671; State v. Seaboard Air Line Ry. Co., 92 Fla. 1139, 111 So. 281, 735; State ex rel. Atlantic Peninsular Holding Co. v. Butler, 121 Fla. 417, 164 So. 128; State ex rel. American United Life Ins. Co. v. Howell, 152 Fla. 866, 13 So.2d 214; State ex rel. Enby v. Wood, 140 Fla. 185, 191 So. 769; State ex rel. Dixie Inn v. City of Miami, 156 Fla. 784, 24 So.2d 705, 163 A.L.R. 577; Permenter v. Younan, 159 Fla. 226, 31 So.2d 387. Such being its effect, the hearing on such a motion contemplates the entry of a final order without the submission of evidence, either quashing or dismissing the alternative writ or granting the peremptory writ to the extent that the prayer of the alternative writ is wellfounded; State v. Seaboard Air Line Ry. Co., 92 Fla. 61, 109 So. 656: Leonard Bros. Transfer & Storage Co. v. Carter, 127 Fla. 198, 172 So. 924; State ex rel. Raulerson v. Smith, 157 Fla. 838, 26 So.2d 898.
Applying the rule just stated to the issues made by the writ and answer, it will be observed that the allegations of the answer raise two questions for determination: (1) Does the plan whereby the Board of Control offers to provide a legal education for the relator at a law school over which it has no jurisdiction and which is located outside the State of Florida, the relator being unwilling to accept the provisions of the plan, accord to the relator the equal protection of the law guaranteed him under the Fourteenth Amendment to the Federal Constitution? (2) If this proposed plan does not afford to the relator the equal protection of the laws, does the alternative plan for enrolling the relator in the school of law recently established at the Florida Agricultural and Mechanical College for Negroes and making temporary provision for his instruction in the College of Law of the University of Florida until such time as adequate and comparable facilities and personnel for such course of study can be obtained and physically set up at the Florida Agricultural and Mechanical College for Negroes, satisfy the constitutional requirements of equal protection?
If under the controlling law either of these questions is answered in the affirmative, it follows that the proper order to be entered should be one in favor of the respondents; if both questions should be answered in the negative the order to be entered should grant the relief sought by the relator.
The first question presented by the answer is not a new one. It has long been settled by the decisions of the Supreme Court of the United States  to which the state courts must adhere to the extent that such decisions are decisive of questions involving the application of the Federal Constitution to any given situation  that the requirements of the equal protection clause of the Fourteeth Amendment to the Federal Constitution are not *612 satisfied by a plan offered by a state to its Negro citizens to obtain legal education outside the state, where the state furnishes legal education within the state to its white citizens who desire to pursue such a course of study.
The first of these cases in which the issue was decided was Missouri ex rel. Gaines v. Canada, Registrar of the University of Missouri, decided in 1938 and reported in 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208. The essential facts of the case were that pursuant to the State's policy of separating the races in its educational institutions, the curators of the University of Missouri, a tax-supported and maintained institution of higher learning in the State of Missouri, refused to admit a Negro citizen of the State as a student in the law school of the University solely because of his race, and, there being no tax-supported university or college in the state where Negro students were eligible for courses in law, offered to the applicant in lieu of admittance to the University law school the opportunity to obtain his legal education at a law school in an adjacent state wherein Negroes were acceptable for admission. The Supreme Court of the State of Missouri upheld the plan offered by the State of Missouri for the education of its Negro citizens outside the state, finding that the provision for legal education in other states of Negroes resident in Missouri satisfied the constitutional requirement of equal protection. State ex rel. Gaines v. Canada, 342 Mo. 121, 113 S.W.2d 783. Upon appeal the Supreme Court of the United States reversed the holding of the state court, saying:
"The basic consideration is not as to what sort of opportunities other States provide, or whether they are as good as those in Missouri, but as to what opportunities Missouri itself furnishes to white students and denies to negroes solely upon the ground of color. The admissibility of laws separating the races in the enjoyment of privileges afforded by the State rests wholly upon the equality of the privileges which the laws give to the separated groups within the State. The question here is not of a duty of the State to supply legal training, or of the quality of the training which it does supply, but of its duty when it provides such training to furnish it to the residents of the State upon the basis of an equality of right. By the operation of the laws of Missouri a privilege has been created for white law students which is denied to negroes by reason of their race. The white resident is afforded legal education within the State; the negro resident having the same qualifications is refused it there and must go outside the State to obtain it. That is a denial of the equality of legal right to the enjoyment of the privilege which the State has set up, and the provision for the payment of tuition fees in another State does not remove the discrimination. * * Nor can we regard the fact that there is but a limited demand in Missouri for the legal education of negroes as excusing the discrimination in favor of whites. * * Whether or not particular facilities shall be provided may doubtless be conditioned upon there being a reasonable demand therefor; but, if facilities are provided, substantial equality of treatment of persons * * * under like conditions cannot be refused. * * *
"Here, petitioner's right was a personal one. It was as an individual that he was entitled to the equal protection of the laws, and the State was bound to furnish him within its borders facilities for legal education substantially equal to those which the State there afforded for persons of the white race, whether or not other negroes sought the same opportunity.
"It is urged, however, that the provision for tuition outside the State is a temporary one,  that it is intended to operate merely pending the establishment of a law department for negroes at Lincoln University. While in that sense the discrimination may be termed temporary, it may nevertheless continue for an indefinite period by reason of the discretion given to the curators of Lincoln University and the alternative of arranging for tuition in other States, as permitted by the state law as construed by the state court, so long as the curators find *613 it unnecessary and impracticable to provide facilities for the legal instruction of negroes within the State. In that view, we cannot regard the discrimination as excused by what is called its temporary character." (Italics supplied.) [305 U.S. 337, 59 S.Ct. 236.] See also Sipuel v. Board of Regents, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247, rev'g. 199 Okla. 36, 180 P.2d 135; and McLaurin v. Oklahoma State Regents for Higher Ed., D.C., 87 F. Supp. 526.
The decision of the Supreme Court of the United States from which we have quoted is binding upon this court in respect to the Federal constitutional question therein decided. Accordingly, it must be held, on authority of the case, that the plan offered by the Board of Control for giving the relator out-of-state schooling as an only means of affording him a legal education, while law school training is provided within the state for white students, does not comply with the mandatory provisions of the Fourteenth Amendment to the Federal Constitution, which require that equal protection of the law shall be accorded to every citizen.
The alternative plan provided by the Board of Control for the legal education of the relator at a law school within the state presents quite a different situation. As appears from the answer filed by the respondents, the allegations whereof are admitted to be true under the state of the pleadings, the Board of Control, since the institution of the suit, has established a school of law at the Florida Agricultural and Mechanical College for Negroes, located at Tallahassee. The Board is ready to admit the relator to this law school, provided he makes his application within the time allowed for members of any other group to apply for admission to a course in law at any other tax-supported law school in Florida. At the newly created law school for Negroes, courses of study will be provided for the relator on a basis and under conditions equal to those at any tax-supported institution of higher learning for white students in the State, as soon as these courses can be actually and physically set up and placed in operation. If at the time of his enrollment the Board has been unable to have a course in law physically functioning and in actual operation at the Florida Agricultural and Mechanical College for Negroes, the relator will be given instruction temporarily at the state institution of higher learning for white students which offers a law course. Upon graduating and receiving his degree in law from the Florida Agricultural and Mechanical College for Negroes, the relator will be entitled to all benefits and privileges accorded to graduates of any other tax-supported law school in the State of Florida.
In our view this alternative plan presented by the respondents in their answer satisfies all the requirements of the equal protection of the laws clause of the Federal Constitution. Moreover, it conforms as nearly as it can, with due regard to the requirements of the paramount Federal law, with the long established policy of the State of Florida that there shall be a system of segregation of the races in the state school system but that impartial provision shall be made in the schools for white and Negro students alike. See Section 12, Article XII, Constitution of Florida, F.S.A.; Sections 228.09, 239.01, as amended, Florida Statutes, 1941, F.S.A. For under the plan the State will furnish the relator with the legal education requested as soon as such course of study will be furnished to new applicants of any other race group. It will provide the necessary instruction at a tax-supported college or university within the borders of the state. It will offer to the relator facilities for legal education at a Negro college which, according to allegations of the answer and admitted by the motion for peremptory writ to be true, will be substantially equal to those offered within the state at any tax-supported institution of higher learning whose enrollment is restricted to white students. It will stand ready to furnish law instruction, temporarily, at the State university maintained exclusively for white students, in the event adequate facilities for teaching the course are not actually and physically available *614 at the state law school established for Negroes at the time of relator's application and enrollment.
No court in the land has ever required of a sovereign state any more than is encompassed within the plan proposed by the Board of Control in its answer. Every individual political right and privilege guaranteed the citizen by the provisions of the Federal Constitution is maintained under the program, while at the same time the right of the State to adopt such method as it finds best designed to afford substantially equal educational opportunities to Florida citizens of different race groups has been preserved. See Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208, reversing 342 Mo. 121, 113 S.W.2d 783, complying with mandate 344 Mo. 1238, 131 S.W.2d 217; McLaurin v. Oklahoma State Regents for Higher Ed., 70 S.Ct. 851 reversing 87 F. Supp. 528; Fisher v. Hurst, 333 U.S. 147, 68 S.Ct. 389, 92 L.Ed. 604, denying motion for conforming to mandate of Sipuel v. Board of Regents, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247, in 199 Okla. 586, 190 P.2d 437; Sweatt v. Painter, 70 S.Ct. 848, reversing Tex.Civ.App., 210 S.W.2d 442.
The mere fact that under the plan the Board of Control proposes to enroll the relator in the Florida Agricultural and Mechanical College for Negroes instead of at the University of Florida maintained for whites is entirely without legal significance; as is also the fact that under the plan the relator may possibly receive part of his instruction at a law school maintained for whites and the remainder at a law school established exclusively for Negroes and finally receive his degree from the latter institution if ever he successfully completes his course of study. It is for each of the states to decide upon the method to be pursued by it for providing public education to its citizens; and so long as the method adopted does not infringe, impair or abridge the personal political rights of the citizen the decision cannot be made the subject of judicial interference. See Gong Lum v. Rice, 275 U.S. 78, 48 S.Ct. 91, 72 L.Ed. 172; Cumming v. Board of Education of Richmond County, 175 U.S. 528, 20 S.Ct. 197, 44 L.Ed. 262; State v. Witham, 179 Tenn. 250, 165 S.W.2d 378; Compare Sweatt v. Painter, 70 S.Ct. 848, reversing Tex.Civ.App., 210 S.W.2d 442; McLaurin v. Oklahoma State Regents for Higher Ed., 70 S.Ct. 851, reversing 87 F. Supp. 528.
As stated in Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 1140, 41 L.Ed. 256, with respect to the effect of the Fourteenth Amendment in regard to state laws and regulations requiring segregation of races in state supported institutions:
"The object of the amendment was undoubtedly to enforce the absolute equality of the two races before the law, but, in the nature of things, it could not have been intended to abolish distinctions based upon color, or to enforce social, as distinguished from political, equality, or a commingling of the two races upon terms unsatisfactory to either. Laws permitting, and even requiring, their separation, in places where they are liable to be brought into contact, do not necessarily imply the inferiority of either race to the other, and have been generally, if not universally, recognized as within the competency of the state legislatures in the exercise of their police power. The most common instance of this is connected with the establishment of separate schools for white and colored children, which have been held to be a valid exercise of the legislative power even by courts of states where the political rights of the colored race have been longest and most earnestly enforced. * * * The distinction between laws interfering with the political equality of the negro and those requiring the separation of the two races in schools, theaters, and railway carriages has been frequently drawn by this court."
This holding has been expressly approved and followed in an unbroken line of decisions of the Federal Courts recognizing or upholding the validity of state laws which require segregation of races in state supported institutions or facilities, when such laws have been attacked on the ground that they result in unlawful discrimination. *615 See Cumming v. Board of Education of Richmond County, 175 U.S. 528, 20 S.Ct. 197, 44 L.Ed. 262; McCabe v. Atchison T. & S.F.R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169; Gong Lum v. Rice, 275 U.S. 78, 48 S.Ct. 91, 72 L.Ed. 172; Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Sipuel v. Oklahoma Board of Regents, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247.
So it is that in making provision for public education for its citizens, the State, in its discretion, may establish separate schools for whites and Negroes  indeed should and must do so where the state constitution and statutes so require  without being thought guilty of any infraction of the Federal law solely by reason of that fact; the only proper inquiry in a given case being whether, having undertaken the burden of educating its citizens at public expense, the separate facilities provided each of the races affords substantially equal accommodations and opportunities to both races alike. And while the Fourteenth Amendment to the Federal Constitution requires that substantially equal opportunities and privileges shall be afforded every citizen regardless of race or color, it is so well settled as hardly to need citation of authority that equality of treatment need not mean identity of treatment, with respect to a tax-supported facility. Hall v. DeCuir, 95 U.S. 485, 503, 24 L.Ed. 547; People ex rel. Cisco v. School Board, 161 N.Y. 598, 56 N.E. 81, 48 L.R.A. 113; Annotation 103 A.L.R. 713.
The relator attempts to make some point of the fact that the answer shows on its face that the resolution by which the Board of Control created and established the school of law at the Florida Agricultural and Mechanical College for Negroes was adopted subsequent to suit and after the alternative writ had been served upon the respondents; the implication being that by reason of that fact the respondents should be precluded from setting up the establishment of the law school, as a defense in their answer.
We do not deem the point of any consequence. The fact that the resolution of the Board of Control was adopted after the issuance of the alternative writ does not preclude the respondents from setting up the creation and establishment of the new school of law as a complete and sufficient answer to the relief sought by the writ. "The alternative writ of mandamus being itself in the nature of a rule to show cause, any cause which exists at the time fixed for making return or showing cause is available as an answer to the mandate of the writ. And this principle holds good, even though the issuing and serving of the alternative writ be regarded as the beginning of an action; and any fact which occurs after service of the alternative mandamus, if of such a nature as to constitute a sufficient answer to the mandate of the court, may be set forth in the return by way of defense." High's Extraordinary Legal Remedies, 3d Ed., Sec. 475, p. 456; see also, State ex rel. Sharp v. Weeks, 93 Mo. 499, 6 S.W. 266; State v. Board of Metropolitan Police Commissioners, 170 Ind. 133, 83 N.E. 83; State ex rel. Haley v. Dilworth, 80 Mont. 111, 258 P. 250; State ex rel. Kavanaugh v. Henderson, 350 Mo. 968, 169 S.W.2d 389.
A final point suggested by the relator  but one we deem to be without merit on the state of the pleadings  is that inasmuch as the law school at Florida Agricultural and Mechanical College for Negroes has been but recently established, it must follow that proper adequate facilities and sufficient teaching personnel will not be actually available at the Negro college when the time comes for him to begin his course of study.
It is clear from the record that at the present time the relator does not have an application pending for admission to a current or future term of a first-year law class at any State maintained institution of higher learning; the application formerly submitted by him being only for admission to the first year class of the College of Law of the University of Florida for attendance at the 1949 summer session, now long since past. What the relator suggests, *616 therefore, with respect to facilities at the Negro college, may or may not prove true, in whole or in part; the matter being dependent upon the seasonableness with which he renews his application. Certainly, the requirement that he keep his application current for each succeeding term is not unreasonable, for as much as this is required of every student, whether white or Negro, desirous of attending classes at any state maintained institution of higher learning. Without such requirement it is plain that budgets comprehensive enough to meet legitimate educational needs could never be intelligently framed nor could state funds be made available in every instance to meet them.
The bona fides of the alternative plan offered by the Board of Control and the Board's authority to establish the law school at the Negro college are not open to question by the relator under the pleadings in this proceeding, for by its answer the Board has shown that it will offer substantially equal opportunities to the relator and under the controlling statute the Board "has jurisdiction over and complete management and control" of the several universities and college of the State's University system, and "is invested with full power and authority to make all rules and regulations necessary for their governance, not inconsistent with the general rules and regulations made or which may be made at any joint meeting of the said board with the state board of education * * * to have full management, possession and control of each and every of the said institutions and every department thereof * * * to provide for the course of instruction and the different branches and grades to be kept and maintained thereat, and to alter and change the same * * * to make and prepare all necessary budgets of expenditures for the enlargement, proper furnishing, maintenance, support and conduct of the same * * *." Section 240.04, Florida Statutes, 1941, F.S.A.
The Board's resolution appended to the answer mandatorily requires, without a single element of discretion left to any school head whether or not to obey the mandate, the physical establishment of the law school thereby created at the Florida Agricultural and Mechanical College for Negroes, with public funds (of which there are some for these purposes) as soon as the necessary physical equipment and teaching personnel can be assembled. It also mandatorily requires that if the law school is not in position actually to function at the time of the enrollment of the relator after timely renewal of his application, then and in that event, the relator will be given instruction in his desired course at any other State institution within the State offering the course. Under these arrangements it is apparent that whatever the state of the facilities present at the Negro college at the time of the enrollment of the relator at the college, he will receive immediate instruction in his desired course of a calibre substantially equal to, perhaps identical with, that received by any white student enrolled at the only tax-supported institution now offering the course of study within the State of Florida.
Due to the nature of the issues arising out of the pleadings, it is our conclusion that the entry of a final order herein should be withheld and the jurisdiction of the cause retained until it be shown to the satisfaction of this court either that the Board of Control has furnished, or has failed to furnish, to the relator, in accordance with the principles stated in this opinion, and after his due application for enrollment, such opportunities and facilities for pursuing his desired course of study as are substantially equal to those afforded all other students duly enrolled in the same or a like course of study at any of the tax-supported institutions of higher learning within the State wherein such course is offered.
Either party to this cause may apply in this proceeding for the entry of an appropriate order finally disposing of the case, after due and regular application for enrollment has been made by the relator and such opportunities and facilities have or have not been made available to him in *617 such a tax supported institution of higher learning.
It is so ordered.
ADAMS, C.J., and TERRELL, CHAPMAN, THOMAS, HOBSON and ROBERTS, JJ., concur.