60 So.2d 162 (1952)
STATE ex rel. HAWKINS
v.
BOARD OF CONTROL et al.
Supreme Court of Florida, en Banc.
August 1, 1952.
*163 H.E. Hill, Daytona Beach, for relator.
Richard W. Ervin, Atty. Gen., and Frank J. Heintz, Asst. Atty. Gen., for respondents.
SEBRING, Chief Justice.
This is the third appearance of this cause in this Court. It is now before the Court on a motion by the relator for the entry of a peremptory writ notwithstanding the return heretofore filed by the respondents.
The cause was initiated by the relator on May 30, 1949, when he filed a petition for a writ of mandamus to require the members of the State Board of Control to admit him to the College of Law of the University of Florida for attendance at a summer session of the first-year law class to begin in the summer of 1949. In due course the members of the Board of Control filed their return to the alternative writ issued in the cause, and, on April 13, 1950, the relator filed his motion for a peremptory writ notwithstanding the return.
Upon due consideration of the issues raised by the pleadings, the Court denied the motion, because the relator had not shown himself entitled, under the pleadings, to the relief sought, in that (1) he did not have pending, at the time he filed his motion, an application for admission to a current or future first-year law class at any state maintained institution of higher learning; the application formerly submitted by him being only for admission to the first-year class of the College of Law of the University of Florida for attendance at the 1949 summer session; and (2), assuming the regulations of the Board of Control requiring all applicants for admission to keep their applications current to be an unreasonable regulation, it was plain from the facts alleged in the return filed by the Board of Control, and admitted by the relator's motion to be true, that the State of Florida, acting through the Board of Control, had established a school of law at the Florida Agricultural and Mechanical College, which is a state institution maintained exclusively for Negroes, to which the Board was ready to admit the relator, provided he made his application for admission within the time allowed for students to apply for admission to a course in law at a tax-supported law school in Florida; that the Board of Control was prepared to offer to the relator "facilities for legal education at a Negro college which [were] * * * substantially equal to those offered within the state at any tax-supported institution of higher learning whose enrollment [under the Florida Constitution] is restricted to white students"; and that the Board stood ready "to furnish law instruction, temporarily, at the State university maintained exclusively for white students, in the event adequate facilities for teaching the course [were] not actually and physically available at the state law school established for Negroes at the time of relator's application and enrollment." See State ex rel. Hawkins v. Board of Control, Fla., 47 So.2d 608, 616.
In the opinion handed down by the Court, the issues between the parties were decided as a matter of pleading and not upon the basis of facts determined after the submission of proofs. But because of the public importance of the questions presented, the Court, in the interest of justice, did not enter a final judgment quashing the alternative writ and dismissing the cause (as it could have done under well-established rules of pleading and procedure), but left the matter open in order to accord to the relator the privilege, should he see fit to avail himself of it, of renewing his application for admission to a tax-supported law school and then of proving by competent evidence, if he could produce such proof, that the allegations of the return, which as a matter of pleading he had admitted to be true, were not true as a matter of fact; in that the facilities offered at the Florida Agricultural and Mechanical College did not, in truth, afford him the equal protection of the law guaranteed by the Fourteenth Amendment to the federal Constitution.
That such was this Court's purpose in entering the interlocutory order should be plain to anyone from even a casual reading of the opinion, for the opinion concludes: "Due to the nature of the issues arising out of the pleadings, it is our conclusion that the entry of a final order herein *164 should be withheld and the jurisdiction of the cause retained until it be shown to the satisfaction of this court either that the Board of Control has furnished, or has failed to furnish, to the relator, in accordance with the principles stated in this opinion, and after his due application for enrollment, such opportunities and facilities for pursuing his desired course of study as are substantially equal to those afforded all other students duly enrolled in the same or a like course of study at any of the tax-supported institutions of higher learning within the State wherein such course is offered.
"Either party to this cause may apply in this proceeding for the entry of an appropriate order finally disposing of the case, after due and regular application for enrollment has been made by the relator and such opportunities and facilities have or have not been made available to him in such a tax supported institution of higher learning."
Despite this plain wording of the opinion and order, the relator, on May 16, 1951, without submitting, or offering to submit, proofs on the issue of substantially equal opportunity, filed a second motion for the entry of a peremptory writ the return of the Board of Control notwithstanding. On June 15, 1951, the Court denied the motion "without prejudice to the right of the relator to move for the entry of a peremptory writ when he is able to show to the satisfaction of the Court that he has brought himself within the principles enunciated in State ex rel. Hawkins v. Board of Control [Fla., 47 So.2d 608, 616]." For the report of this latter decision see State ex rel. Hawkins v. Board of Control, Fla., 53 So.2d 116, 119.
Again, on June 7, 1952, and without submitting, or offering to submit, evidence designed to show that the facilities offered at the Florida Agricultural and Mechanical College did not accord with the guarantees to which he was entitled under the Federal Constitution, the relator filed a third motion for peremptory writ the return of the Board of Control notwithstanding. In the motion the relator alleged, in part, that "since the rendition of the Court's initial opinion in the case of State ex rel. Hawkins v. Board of Control of Florida, Fla., 47 So.2d 608 et seq., the Relator has reapplied and made due and regular reapplication for enrollment and admission to the School of Law at the University of Florida and has complied with all requirements necessary for enrollment and admission at said institution to no avail * * * that the judgment heretofore rendered in this said cause is a nisi order and interlocutory in its nature and not an appealable judgment. That the Relator desires to take an appeal therefrom but is precluded from so doing unless this Court enters a Final Judgment and to that end the Relator stands on his pleadings as filed herein * * * and * * * moves * * * for the issuance of a Peremptory Writ of Mandamus and that final judgment be entered in the above entitled cause." (Italics supplied.)
The cause is now before the Court for a ruling on the motion.
We take judicial notice, from the general appropriation statute of 1951, Gen. Laws 1951, c. 26859, for the years 1951-53, from the fiscal records of the State Comptroller, and from the official minutes of the State Board of Control (if, indeed, such facts are not plainly apparent from the pleadings), that there is in operation at the Florida Agricultural and Mechanical College a duly established and tax-supported law school maintained exclusively for Negroes, at which are offered law courses similar in content and quality to those offered at the College of Law of the University of Florida, an institution maintained exclusively for white students; and that said law school is not merely an "organization on paper", as has heretofore been contended by the relator, but is in full operation and has classrooms, a law library, a law faculty, and appropriations of public moneys which appear to be sufficient adequately to maintain the law school and to offer legal instruction to such Negro students as are presently enrolled there or who may be reasonably expected to enroll there in the future.
*165 It is apparent from the motion filed in the cause that the relator does not desire to controvert these facts of which we take judicial notice, or to raise any issue as to whether said facilities for instruction will afford him an opportunity to secure a legal education substantially equal to that presently available to white citizens of Florida who have the necessary educational qualifications for admission to a tax-supported law school. That such is his position is made plain by the fact that, as shown by his several motions, the relator has persistently refused to apply for admission to the Law School of the Florida Agricultural and Mechanical College, as permitted by the interlocutory order heretofore entered in this cause, but has applied only to the University of Florida  an institution of higher learning which, under the Florida Constitution, art. 12, § 12, is open only to white students so long as substantially equal opportunities and facilities are afforded elsewhere in the State to Negro citizens; and that having been refused admission to the University of Florida Law School, he has made his third demand for a peremptory writ requiring him admission to the University of Florida, without offering to submit proofs on the vital issues, and has coupled the demand with the averment that he "stands on his pleadings as filed" and that a peremptory writ of mandamus should be entered thereon.
Presenting the demand for a peremptory writ on this showing can mean but one thing: that the relator intends to stand on the contention that in order to receive the full political rights guaranteed him by the Federal Constitution he must be admitted to the University of Florida Law School, maintained, under the Constitution of Florida, exclusively for citizens of the white race, even though there is in existence in the State a tax-supported law school which is maintained exclusively for Negroes and which, on the face of this record, we must assume will afford to him opportunities and facilities which are substantially equal to those to be found at the University of Florida. This is but another way of contending that in order for there to be equality of treatment accorded a citizen, in respect to tax-supported facilities, there must likewise be complete identity of treatment, or else the requirements of the Federal Constitution will not be satisfied.
This contention is not sound. While the Fourteenth Amendment to the Federal Constitution requires that substantially equal opportunities and privileges shall be afforded every citizen regardless of race or color, the Supreme Court of the United States has held by an unbroken line of decisions beginning with Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256, and continuing to the present day, that equality of treatment need not mean identity of treatment, with respect to a tax-supported facility. See Cumming v. County Board of Education, 175 U.S. 528, 20 S.Ct. 197, 44 L.Ed. 262; McCabe v. Atchison, T. & S.F.R. Co., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169; Gong Lum v. Rice, 275 U.S. 78, 48 S.Ct. 91, 72 L.Ed. 172; Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Sipuel v. Oklahoma Board of Regents, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247. Compare Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; McLaurin v. Oklahoma State Regents for Higher Ed., 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149.
Under the issues as framed and presented, it is our conclusion that the relator has not shown himself to be entitled to a peremptory writ and hence that his motion must be denied; that the alternative writ heretofore issued must be quashed; and that the cause must be dismissed at the cost of the relator.
It is so ordered.
TERRELL, THOMAS, HOBSON, ROBERTS and MATHEWS, JJ., and HOCKER, Associate Justice, concur.