DREW, Justice.
The alternative writ of mandamus in this case was issued by the Circuit Court of Escambia County. The pertinent portions of the writ are as follows:
“That Dan J. Anderson is the duly elected, qualified and acting Superintendent of Public Instruction of Escam-bia County, Florida, and L. D. Mc-Arthur, O. J. Semmes, Sr., M. B. Holmes, W. J. Faris and Carl E. Jones are the duly elected, qualified and act-ting Members of the Board of Public Instruction of Escambia County, and the last five named persons constitute under the laws of the State of Florida, a body politic and corporate, charged under the executive headship of the said Superintendent, with the setting up and operation of the system of public education within said county.
“That as a part of said system there has long been in operation a certain school for vocational training, known as ‘Pensacola Vocational School’, primarily devoted to the education of *344 adults, at 215 West Garden Street, in the City of Pensacola, open to all properly qualified citizens of said county, and which said school is qualified for Veterans training, within the meaning of the statutes of the United States in reference thereto, and teaches a course for training adult students as auto mechanics.
“That there is no other similar or equal school for vocational training existing in Escambia County, Florida, notwithstanding which the Respondents have established a rule of practice refusing to admit persons of the Negro race to the said school, although there are many hundreds of such persons eligible therefor, qualified and desirous of such instruction. And this is persisted in by Respondents notwithstanding that facilities for public education are ordinarily made available in other fields to the Negro citizens of said county, and the further well known fact that by reason of their economic situation vocational training is peculiarly necessary, and universally desired by them. That as Petitioner is informed and believes the Respondents seek to justify their conduct under the provisions of Section 12 of Article XII Constitution of Florida, but the said provision if valid deals solely with children, and has no reference to adult education, and if applicable thereto provides by its terms that ‘impartial provision shall be made for both (races)’.
“That Petitioner has sought admission to the said school, and is qualified therefor, and on Monday, August 20, 1951, he presented himself to Mr. Edgar A. Emmelheinz, who was then and there the Director of said school, performing his duties as such, prepared under his direction an application such as is required of persons seeking admission, and submitted to elaborate inquiry and examination by him and by the Respondent, Dan Anderson, Superintendent of Public Instruction of Es-cambia County, Florida, and announced himself prepared to perform any other conditions precedent to admission which ought to be required, and he avers that he has performed all of such conditions necessary to admission as a student to the course provided for auto mechanics, or whatever name such course is designated by; that such course is now in process of being taught in the said school and by the rules of said school students may enroll for training any Monday morning during the year, but the Respondents have refused to permit him so to enroll solely because he is a Negro person; and Relator says that the action of the Respondents denies to him the equal protection of the law within the meaning of the XIV Amendment to the Constitution of the United States, as interpreted and enforced by the Supreme Courts of Florida and of the United States:
“These therefore are to command you, the Respondents above named, that you do forthwith admit the Relator Simpson White and make available to him the instruction provided by said Pensacola Vocational School in like manner as all other persons and without discrimination, and continue therein hence forth or until such time as facilities of an equal character within Es-cambia County, Florida, are made available to him and other persons similarly situated, or show cause before this Court, if any you have, on the 7th day of September, A.D. 1951, at 9 o’clock A.M., why you fail or refuse to do so.”
The germane portions of respondents’ answer and return are:
“1. That the respondents have not denied admission to the relator to the Pensacola Vocational School solely because he is a Negro person, but that the relator has been denied admission to the said school because he is not qualified for the course of training or study for which he has applied.
“2. That the relator applied for a part-time evening course as motor mechanic, more particularly as the same is shown by the application at *345 tached hereto and marked Exhibit A and made a part hereof by reference.
“3. That the course for which the relator has applied is known.as ‘Evening Trade Extension Classes’ and the Florida State Plan for vocation education for the five year period July 1, 1947 to June 30, 1952, Section 6, Trade and Industrial Education, on page 5 at Section B Sub 1, states that such classes must be supplemental to the daily employment of the students, and that the controlling purpose of this course of study will be to extend the trade knowledge of those workers regularly employed in trade and industrial occupation and those who have been so employed and are temporarily unemployed. That Vocational Education Bulletin 1, general series 1, revised 1948, Administration of Vocational Education, Federal Security Agency, Office of Education, which is a part of the vocational education and training plan of the State of Florida, at page 64, states that evening classes are those which are conducted for workers during their non-working hours-, and that such instruction must be supplemental to employment.
“4. That the application of the relator, Exhibit A attached hereto and made a part hereof, clearly shows that he does not qualify for the training for which he applied according to the foregoing regulations.
“5. That the respondents have the right and may exercise the discretion necessary to determine whether or not a person is qualified for the course selected by that person, and that the relator is attempting to force the respondents to perform an act which is not a clear legal ministerial duty of the respondents.
“6. That the respondents deny' that the relator has been denied the equal protection of the law within the meaning of the 14th Amendment to the Constitution of the United States as interpreted and enforced by the Supreme-Court of Florida and of the United States.”
The only portions of the application referred to in paragraph 2 of the answer and return of the respondents that have any bearing on the issues in this case are that the applicant was 37 years of age; had completed the seventh grade; was employed by the Naval Air Station; that the kind of work performed there was “power mower” and “full time”; that in the past he had been employed as a “Helper,” laborer, “Ringer-Washer” and in the Army was in a “Mobile Unit”; that he desired to enroll in the course of “Motor Mech,”' part time, evenings; that the reason he wanted this type of training was “to learn to repair an become a mech for my trade.”
A trial on the issues made by the foregoing was had before Judge L. L. Fabisin-ski. It resulted in a final judgment against the relator below, the appellant here, and it is from this judgment that this appeal is taken.
We shall hereafter refer to the relator as White and the respondents as the school authorities.
We have carefully examined the record here and we do not find any basis for White’s contention that he was refused admission solely because he was a person of the Negro race. It is true, and the school authorities admit, that a Negro person would not be admitted to. the school. The fact stands out clearly in this record, however, that the reason White was refused admission was that he was not qualified for the course for which he applied.
Classes of the kind here under consideration are known as “Evening Trade Extension Classes.” These classes are conducted under both State and Federal rules and regulations which are known as “State Plan for Vocational Education, State of Florida, Five Year Period, July 1, 1947, to June 30, 1952,” and Federal Security Agency, Office of Education, Pamphlet entitled “Administration of Vocational Education,” Vocational Education Bulletin No. 1, General Series No. 1, Revised 1948.” The following is from the “State Plan for Vocational Education”:
“The controlling purpose will be to extend the trade knowledge of those *346 workers regularly employed in trade and industrial occupations and those who have been so employed and are temporarily unemployed.”
“The dominant aim of the instruction in the evening schools or classes must be to increase vocational efficiency of the worker attending these classes. The work must be supplemental to the daily employment and the instruction organized and directed to carry out this aim. * * ' * ”
And from the Federal pamphlet entitled “Administration of Vocational Education,” etc., is the following:
“The instruction give'n in evening trade and industrial classes shall, under the provisions of the Federal acts, be confined to that which is supplementary to the daily employment of the workers enrolled.
“To be considered supplementary to the daily employment, the instruction must be such as will increase the skill or knowledge of the worker in the trade or industrial pursuit in which he is employed or has been employed. This may improve his ability in. the work that he is doing; help him to keep abreast of technological and economic changes in his occupation; or assist him to qualify for advancement in the field of work in which he is engaged. * * *»
An examination of these regulations establishes quite clearly that the very purpose of this type of vocational training is, to use the very words of the Federal Regulation, “help him to keep abreast of technological and economic changes in Ms occupation or assist him to qualify for advancement in the field of work in which he is engaged.” (Emphasis supplied.) Admittedly, the type of instruction required to enable an automobile mechanic “to keep abreast of technological and economic changes” is vastly different from that which would be required for a person unfamiliar with that work. Certainly the regulations themselves are not capricious or unreasonable, nor is any contention made here that they are. It is essential that there be some one in authority to determine those who are qualified to receive the benefits thereunder. Naturally, that power presupposes the power to determine those who are not so qualified.
If White does not meet the requirements of the regulation, there was no abuse of the discretion of the school authorities in not admitting him. Looking at the record, we find that White was employed by the Naval Air Base and that his permanent duty was a general helper and as such he operated a power mower, a power saw; sometimes he helped plumbers and other skilled labor that needed him on the job. He worked on the carburetor and the mower blade of the mower, but when the power mower needed taking down it was sent to Mainside. He also had driven a truck while in the Air Force and there gained some knowledge of motor maintenance. White testified:
“Q. If a motor actually broke down would you take it to the shop to get fixed? A. That’s right. You are not allowed to tear one down out in the field and fix it. But anything that is small you can fix and repair it right there, — set the blade on it.
“Q. You don’t have any truck repair or automotive repair, or repair of trucks, the motors used in automobiles and trucks? A. Not out there. I don’t work on that type of work. I work for plumbers and anywhere they call me for general helper. If they send me to the mechanics shop, I would have to work there.”
White, in his interview with the school authorities at the time he was seeking admission, said he drove a truck in the Army and made daily inspections of the trucks consisting of checking the water in the radiator and battery, checking the tires and the general condition of the truck. He never did say whether he had ever torn down an engine or whether he had ever done such work for wages.
At the hearing before the lower court, the court asked Anderson, the Superintendent of Instruction of the school who had charge of admissions, if he based his refusal to admit White on the Statute (relat *347 ing to using a white unit for Negro Instruction) and Anderson replied:
“A. On the statute and the rules and regulations we operate under. In this particular case it was not even necessary to even consider whether he was a negro or not, because on the basis of the application' under the rules that come through furnished by the United States Department of Education and State Department, we could not accept his application. This application was turned down on purely the rules and regulations that he cannot comply with.”
There was considerable testimony' introduced by White to show that white persons had been previously admitted to the school in similar classes who did not possess the qualifications. The evidence established this to be true. The reason offered by the school authorities was that a former employee in charge of the department had allowed such entrances, but that he was no longer with the school and they were checking these matters.
The fact that persons had been admitted contrary to the regulations governing the operation of the school had no bearing, however, on the matter under inquiry. There is an old adage that “two wrongs do not make a right.” The fact that others had been admitted to the school contrary to the regulations certainly could be. no reason for admitting White, if he, too, was not qualified. For the court to have lent its aid by requiring the admission of White under such circumstances would have been tantamount to requiring the school authorities to perform an unauthorized act.
In the case of State ex rel. Rankin v. Anderson, Fla., 61 So.2d 920, we held that mandamus would lie only to compel the performance of a ministerial act — one not involving the exercise of discretion. See authorities there cited. The admission of persons to the vocational school required the exercise of discretion by the school authorities and we hold that discretion was reasonably exercised.
White argues that the case is ruled by the decisions of this Court in State ex rel. Hawkins v. Board of Control, 47 So.2d 608, and companion cases, and by the following cases of the United States Supreme Court: Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Sipuel v. Board of Regents of University of Oklahoma, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247; Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114.
In none of the above cases was the question of the qualifications of the applicant raised. On the contrary, the opinions in each case carefully pointed out that the applicant possessed the necessary qualifications for entry. F@r instance, in the Hawkins case, supra, this Court said in speaking of Hawkins [47 So.2d 609]:
“He possesses all the scholastic, moral and other qualifications, except as to race and color, prescribed by the laws of Florida and the rules and regulations of the State Board of Control for admission to the first year class of the College of Law of the University of Florida.”
In Missouri ex rel. Gaines v. Canada, supra [305 U.S. 337, 59 S.Ct. 233], Chief Justice Hughes stated:
' “It was admitted on the trial that petitioner’s ‘work and credits at the Lincoln University would qualify him for ádmission to the School of Law of the University of Missouri if he were found otherwise eligible.’ ”
In Sipuel v. Board of Regents of University of Oklahoma, supra, it was stated:
“ * * * the petitioner, a Negro, concededly qualified to receive the professional legal education offered by the State, applied for admission * *
In Sweatt v. Painter, supra [339 U.S. 629, 70 S.Ct. 849], the applicant’s qualifications were admitted. We quote from the opinion:
“His application was rejected solely because he is a Negro.”
It is apparent from an examination of the above cases that the issue which we have here and on which this case is decided, viz.: Whether White possessed the qualifications required by the pertinent *348 rules and regulations, was wholly absent from the cases upon which White relies.
We hold that the school authorities had the right to determine whether White possessed the qualifications for entry to the vocational school under the State and Federal Regulations; that such authority was exercised after appropriate inquiry and in a reasonable manner and that there was ample evidence to support the action taken. Therefore, there was no error in the judgment of the lower court appealed from and it is hereby
Affirmed.
SEBRING, C. J., and THOMAS and MATHEWS, JJ., concur.